## DORSEY v. McFARLAND et al.

Where A, a married man, mortgaged the homestead to B, without the concurrence of his wife, and A and his wife subsequently mortgaged to C; and B and C both foreclosed their mortgages, neither making the other a party; whereupon C filed a bill against B to set aside the decree of foreclosure of the latter, alleging that the homestead premises did not exceed in value five thousand dollars: *Held*, that C could urge the same objections to the mortgage of B, that A and his wife could; that B's decree was a cloud upon the title, and impaired the security, and that C was entitled to have it set aside.

Any other rule would allow the husband alone the power to obstruct the power of alienation belonging to both husband and wife.

APPEAL from the District Court of the First Judicial District, County of Los Angeles.

On the first day of July, 1854, one Bruno Abila executed a mortgage to defendants. Subsequently, in January and February, 1855, Abila and wife executed two mortgages to plaintiff upon the same land. Both plaintiff and defendants foreclosed their respective mortgages by separate suits, without making each other parties. After the judgment of foreclosure in each case, Dorsey, the plaintiff, filed his complaint against McFarland and Downey, defendants in this action, to set aside their judgment against Abila, upon the ground that the mortgaged premises were the homestead of Abila and wife; that the value of the land did not exceed the sum of five thousand dollars, and that the mortgage to defendants, McFarland and Downey, by Abila alone, was, therefore, void. The Court below found the facts as stated in the complaint of Dorsey, and gave judgment for him, and the defendants appealed.

*J. A. McDougall* for Appellants.

The simple question appears to be, whether or not the subsequent mortgagee can set up the homestead as against the first mortgagee after the decree, and without the consent of the par-

ties entitled to the homestead. Or whether the first mortgage is by the statute made absolutely void as to third persons.

The object of the law was not to create an estate, but to protect the persons of the family.

The object of the law is expressed in its terms. Rev. Laws, p. 850, § 1. "The homestead" * * "to be selected by the owner thereof" * * * "shall not be subject to forced sale or execution." This expresses the substance and essence of both the Constitution and the law.

Ibid, § 2, provides that no mortgage-sale, or alienation of the homestead, shall be valid without the signature of the wife.

This second section is to be construed by the object and the context.

It is contended by appellants that the object is personal. That from the context it appears that the term "valid" means valid as to the persons—the family—and indeed so this Court has held indirectly in the whole course of decisions.

The place where a person or family resides is not necessarily the homestead. Independent of this fact, the owner has a choice, and in Morse v. McCarthy, July Term, 1856, (since reaffirmed,) this Court held that residence is but *prima facie* evidence of the fact. No specific act is necessary to constitute the homestead, but it must be selected or claimed as such. Upon the foreclosure of a mortgage, the homestead, if set up, is a defence *pro tanto*. Upon execution upon a monied judgment it is the business of the claimant to select what he claims as exempt. The purpose of the law is to secure a home to the debtor. The rule of the law is, that he shall select his home, and the conclusion seems to be, that he or the family must claim.

It is a charitable concession of the land to the debtor and family as against creditors, in which a stranger cannot have any beneficial interest without a fraud upon creditors. It is an exemption in favor of the debtor's family solely, and it would seem absurd to say, that a stranger might claim this exemption in order to set up a right or beneficial interest in himself.

Dorsey avers that that this was Abila's homestead. Dorsey avers that this was the entire estate of Abila. Certainly Dorsey has no right to tender such issues to McFarland and Downey.

It may be said that a homestead right is an estate, but it is only so *sub modo*. It is a right of exemption or protection of certain premises in favor of certain parties for a specific purpose, and it is only an estate, these conditions existing, both of parties and purpose.

In this instance, the first mortgage was given in good faith for money loaned. The mortgagors desire the mortgage paid. The second mortgagees procure their conveyance with a knowledge of these facts, upon a calculation that they can oust the mortgagors and the first mortgagees; defeat both homestead

and mortgage. The equities of both mortgagees are of the same dignity, except as against the Abilas, with the difference that McFarland and Downey's is first in time, and Dorsey had notice. Dorsey has no relation or interest in the homestead. The law makes no provision for him. Equity gives him no advantage. It is a personal and not a transferrable interest. It is an exemption in favor of the person rather than an absolute right.

*J. R. Scott* for Respondent.

As to the point contended for by appellants, that the privilege of the homestead being a personal one, and creating no estate beyond a mere personal privilege; in the case of Taylor *v.* Hargous, (4 Cal. R., 268,) this Court held a different doctrine.

There the Court say, that as soon as the place, by the occupancy in good faith by the family, acquires the character of a homestead, the estate is turned into a sort of joint-tenancy, with the right of survivorship as between husband and wife, which estate cannot be altered or destroyed except by the concurrence of both, in the manner provided by law; thus clearly repudiating the doctrine contended for by appellants upon this point. It is submitted that this proposition of appellants is erroneous, and that Dorsey, the respondent, acquired all the rights of Abila and wife, whilst McFarland and Downey acquired no rights whatsoever, either by their mortgage or judgment.

It is claimed by the appellants that the equities are equal; that both mortgages were taken in good faith, as well that of McFarland and Downey as those of Dorsey.

It is submitted that this proposition is incorrect, and that McFarland and Downey were not mortgagees in good faith. The complaint states, and the findings of the Court show, that the premises upon which they took their mortgage, were the residence and homestead of Abila and wife; and had so been for many years previous to the taking of the same, and ever since had been; hence their mortgage was a fraud upon the rights of the wife. Their long residence upon the same was notice to all the world of their rights, and the dedication of the same as a homestead. The doctrine is fully established by this Court in the case of Cook & Burgwall *v.* McChristian, 4 Cal. R., 23.

It is further submitted that the mortgage of McFarland and Downey was a nullity, as also the judgment upon the same, so far as the husband and wife, or any person claiming under them, was concerned.

The husband could not convey or hypothecate; the husband and wife could. See section two of the Homestead Law, Comp. Laws, 850. Hence, the husband having no capacity to convey the homestead without the signature of the wife, the mortgage of McFarland and Downey gave them no more rights than if the same had been executed by a third person who had

no interest whatever in the premises, whilst the mortgage of Dorsey, executed by husband and wife, gave him all the rights of a mortgagee in good faith. It is contended by appellant, that Dorsey took his mortgage with notice of McFarland and Downey's claim. It is submitted that this proposition is untenable. He took his mortgage, in other words, with notice that they had no claim whatever, as the residence of Abila and family gave notice to all the world that the premises mortgaged were their homestead; hence Dorsey had notice of what? Merely that McFarland and Downey had a mortgage which the law declares to be invalid; and can it be pretended that a mortgage made by a person having no right to make the same, would prevent him from taking a mortgage or conveyance from the persons having a right to mortgage or convey, and thereby make him a mortgagee or grantee in bad faith?

The same doctrine is fully established in the case of Sargeant v. Wilson, at the October Term of this Court, 1855; also in Poole v. Gerrard, January Term of this Court, 1856; also in McHenry v. Moore, January Term, 1855.

BURNETT, J., after stating the facts, delivered the opinion of the Court—MURRAY, C. J., concurring.

The only point in this case is, whether the plaintiff can urge the same objections against the mortgage to McFarland and Downey as would be good, if urged by Abila and wife. In other words, is the mortgagee of Abila and wife in a worse condition than they are? It is contended by the learned counsel for defendants, that the right of homestead is a personal privilege, which can only be asserted by the individuals to whom it appertains, and that the power to assert it cannot be transferred or conveyed to another.

The decisions of this Court in the different cases brought up before us, would seem to have settled principles, by the legitimate application of which, this case can be determined. The facts and circumstances of this case, it is true, differ from those of any preceding case.

In the case of Clark et al. v McChristian, 4 Cal., 23, this Court held that the "homestead" was the dwelling-place of the family; that the residence of the family upon the premises would raise the *prima facie* presumption, that they were held as the "homestead," and would be notice to all the world. In the case of Taylor v. Hargous, this decision is affirmed, and it was held, in the latter case, that the removal of the husband and wife, after a sale by the husband in which the wife did not join, was not an abandonment of the right of homestead, and no evidence of such abandonment. In this same case, it was held, that the estate in the homestead was "a sort of joint-tenancy, with the right of survivorship, at least as between the husband and wife, and this

estate cannot be altered or destroyed, except by the concurrence of both in the manner provided by law." 4 Cal., 273, Morse v. McCarty, July T., 1856.

In the case of Poole v. Gerrard, January T., 1856, 6 Cal., 71, it was decided that separate deeds, executed by husband and wife, were invalid, and that a joint deed of husband and wife was required. In the case of Sargeant v. Wilson et al., 5 Cal., 506, it was held, that a sale of the homestead by the husband alone, is not absolutely void, but only void as to the *homestead value.*

It is clear from these decisions, that the mortgage of Abila to McFarland and Downey was void as to the homestead value, and that if the premises were worth not exceeding five thousand dollars, they took nothing. It is equally clear, that the husband and wife had the right to sell in the proper mode. The statute does not intend to trammel the alienation of the homestead, except so far as to require the free assent of the two proprietors, in the mode prescribed.

If, therefore, the position of defendants be correct, then the wrongful act of the husband in executing the first mortgage, would, practically, prevent the husband and wife from executing any subsequent mortgage or alienation, until, by a suit, they had set aside the first mortgage. For, if Dorsey could gain no right to set aside the first mortgage, then it would have been worse than idle for him to have taken the mortgages to himself. And a purchaser would have been in the same condition. The legitimate result of such a rule would be to allow to the husband alone the power to obstruct, in advance, the free exercise of the right of alienation belonging to both husband and wife. This would be inconsistent with the rights incident to the ownership of property.

It has been justly settled, in cases of fraudulent sales of real estate, that if the title once vests in an innocent purchaser, any one can *afterwards* purchase of him with full knowledge of the original fraud; otherwise, the innocent purchaser could not enjoy the full right of alienation, and his property would be consequently diminished in value. The same principle applies in this case. The act of the husband being void, did not impair the right to sell the homestead with the same effect as if the mortgage had never been executed. And the fact, that Dorsey knew of its existence at the time his mortgages were executed, did not affect his right in the least. He knew the title was still in Abila and wife, and that the mortgage to McFarland and Downey was void. The rights of Dorsey, under his mortgages, being established, his *right* to set aside the judgment of foreclosure upon the mortgage to McFarland and Downey, is not denied. The judgment was a cloud upon the title, and would impair the value of the security.

Judgment affirmed.