JOHNSTON et al. vs. TURNER, Adm'r.

1. HOMESTEAD: *Descends to widow and children.*

    The widow and children of one who held a homestead during his life are entitled to occupy and enjoy it with the like exemptions during the time specified in the statute; and the question of homestead may be determined by the acts, declarations, circumstances and general conduct of the party which tend to show what his *bona fide* intention was.

2. — *As affected by the absence of the wife and children.*

    The domicile of the wife and minor children follows that of the husband, and their actual personal residence at the homestead place is not necessary to perfect the right in him, or to entitle them to the benefit of it after his death. Where the head of a family has, in good faith, selected a place of residence, owns the land, and has entered and resides upon it, the absence of the wife and children might require stronger proof of intention, but nothing more.

3. — *Interest of the wife and children independent.*

    The homestead estate is created equally for the benefit of the wife and children, and none of them can do an act that will impair or prejudice the rights of the others.

4. — *Assertion of, infancy, etc.*

    The children are not required to assert their right of homestead during the continuance of the wife's right, by reason of her priority; and delay after the expiration of her right will not bar or prejudice the rights of minors, who are not required to assert their rights or take possession of the homestead, on account of their incapacity.

APPEAL from *Phillips* Circuit Court.

Hon. JOHN E. BENNETT, Circuit Judge.

*Rose* and *Palmer & Sanders*, for appellants.

*Garland & Nash*, contra.

WALKER, J. The appellants, on the 14th day of January, 1870, filed their petition in the probate court of Phillips county to have a homestead assigned them in the lands of

their father, Thomas P. Johnston, deceased. The probate court granted the prayer of the petitioners, and the administrators appealed to the circuit court, where the prayer of the petitioners was denied and the appeal dismissed.

By the provisions of the statute, Gould's Dig., ch. 68, it is provided : Sec. 29. " Every free white citizen of the state, male or female, being a householder or the head of a family, shall be entitled to a homestead not exceeding one hundred and sixty acres of land, or one town or city lot, being the residence of such householder or head of a family, with the appurtenances." * * Sec. 30. " This section is to be construed to exempt such homestead, in the manner aforesaid, during the time it shall be occupied by the widow, or child, or children of any deceased person, who was, when living, entitled to the benefits of this act."

These are the material parts of the statute under which the claim to a homestead in this case is asserted.

The main question to be determined is one of fact : Was Thomas P. Johnston, deceased, at the time of his death, a " free, white citizen of the state of Arkansas," was he a householder or the head of a family, and was he the owner of a homestead in the state? If these facts are shown to have existed at the time of his death, the rights of the widow and the children exist as derived through and under him. In other words, if Johnston, in his life time, held a homestead which he could have maintained as exempt from sale by his creditors, then the widow and the children could occupy, hold and enjoy it for the time specified in the statute, with like exemptions. This question of citizenship, residence and ownership, is to be determined from the evidence in the case, which may consist of acts, declarations, circumstances and general conduct of the party, which tend to show what his *bona fide* intention was.

That his wife and children did not accompany him, or reside with him on the farm he purchased in Phillips county, may be received, not as evidence of no right to a homestead in the widow and children, but to show whether Arkansas was his home, and as it is natural, if not necessary and proper, that the wife and husband should reside at the same place, this fact (if established) is entitled to greater or less weight, according to the circumstances which may be shown to have induced it.

These general remarks may suffice to direct us in the application of the evidence, which is in substance, as follows : Thomas P. Johnston, who resided in Georgetown, Kentucky, married Laura Miller, the daughter of a widow lady (Mrs. Miller) of that place. Mrs. Miller and her two daughters, one of whom married Johnston, were the owners of a plantation in the state of Mississippi, and Johnston with his family resided there for several years, during which time Mrs. Johnston always went to Kentucky to spend the summer with her mother, who was a lady in easy circumstances, and Johnston himself spent part of the summer months in Kentucky. In 1855 or 1856, Johnston went with his family to California, but so far as appears in evidence, acquired no personal residence, and returned with his family, and resumed his residence, in 1857 or 1858, in Mississippi. The evidence more immediately bearing upon the question of citizenship in Arkansas, is that of the uncle of Johnston, who deposed, that Johnston sold his place in Mississippi and bought a farm on Old Town Ridge in Phillips county, Arkansas, that a difficulty arose after the first payment was made, about a mortgage incumbrance on the place, that witness was applied to for advice and assistance, and after having examined the title papers, he advised Johnston, that it might be best to abandon his purchase, to which he replied, that he did not wish to get

rid of it, that he was so situated that he could not well do without the place, that he had sold his place in Mississippi, and had no other place to cultivate, that the place he had bought was a permanent home. Witness was satisfied, from repeated conversations with Johnston, that he considered his place on Old Town Ridge, his permanent home, up to the time of his death.

Another witness deposed, that Johnston came to Phillips county, Arkansas, in the fall of 1859, and purchased the Old Town Ridge place, that in the winter of 1860, he brought his negroes, stock and household effects, and settled on the place, cultivated it that year, remained on it until in the summer, and went to Kentucky (as was the custom of Kentuckians during the summer months) with the avowed intention of bringing his wife and children home with him, but soon returned without them, and stated that his mother-in-law could not come to Arkansas, and that his wife had remained to be with her. Johnston lived upon, and cultivated the place again in 1861, and again went to Kentucky, and made his arrangements to take his wife and children with him to his home in Arkansas, but was prevented from doing so by sickness, of which he died in the spring of 1862. He had no home of his own in Kentucky, and his wife and children lived with his wife's mother all the while after she left Mississippi; after his death his wife expressed a wish and determination to go to Arkansas, and take possession of the Old Town Ridge place, of which her husband had been possessed, and cultivated up to the time of his death, and on which his negroes and personal property all the while remained, but was prevented from doing so because that part of the state was occupied by the military forces of the United States, and intercourse between Kentucky and her husband's place of residence was prohibited, or an attempt to do so

attended with danger. She at all times spoke of the Old Town Ridge place as her home, and did, at the close of the war, in 1865, put her sister, Mrs. Warren, in possession of the place, by whom it was occupied and jointly cultivated, or in the language of the witness, "Mrs. Warren and Mrs. Johnston cultivated the place in partnership" until 1868, at which time the appellee, Turner, as administrator, took possession of it.

These facts are fully corroborated by several other witnesses; in addition to which it was proven, that Johnston not only claimed it as his home and his intention to make it permanently such, but that he listed his property on the citizens' list of taxation, and paid a poll tax, and was recognized by his neighbors as a citizen, and solicited to become a candidate for office.

The appellants, Thomas E. Johnston and Treanor Johnston, are proven to be the children and the only children of Thomas P. Johnston. There is no proof that the widow or the children ever, at any time, resided upon the homestead place, but the proof is that they went to live with Mrs. Miller at Georgetown, Kentucky, and remained there with Mrs. Miller until after the death of Thomas P. Johnston in 1862. After that time Mrs. Johnston paid several visits to Arkansas, to look after her business affairs, and upon each visit spent a short time on the homestead place, and returned to Kentucky to the home of her mother. She married in 1868, and in the fall of that year died. The lands in the petition described were Johnston's.

Such is, substantially, the evidence material to the issue. The case was submitted to the court sitting as a jury, who, after having heard the evidence, found the following conclusions of fact from the evidence:

1. That in the latter part of the year, 1849, Thomas P. Johnston purchased the land described in the petition, and

situate in Phillips county, Arkansas. That he cultivated, and made a crop on the same in 1860. That he had the property assessed to him on the resident tax list, and that he also paid a poll tax in said county. That in 1861, Thomas P. Johnston made some improvement on the dwelling house; in August, 1861, he went to Kentucky, where his family and wife were residing, and had been since 1859, and by reason of ill health remained there until April, 1862, when he died.

2. The wife and children of Thomas P. Johnston lived with the mother of Mrs. Johnston, in Georgetown, Kentucky, from 1859 to 1868, when and where Mrs. Johnston married Doctor P. Rankin, at which time she went and lived with him until her death.

3. That the wife nor children of Thomas P. Johnston, have ever resided or made their home in Arkansas, or on the premises as described.

4. That Bart Y. Turner, as administrator, has had possession of said premises since 1868, and that no claim has ever been made by any person until the filing of this petition for an exmption for homestead purposes.

The appellants at the close of the evidence asked the court to declare the law applicable to the case to be:

1. That a residence in good faith established by a citizen of the state being a householder or head of a family, upon a tract of land owned by him, carries with it a homestead right.

2. That the temporary absence of the family, satisfactorily accounted for, does not impair this right.

3. That upon the death of the husband, the homestead is of right cast upon the widow.

4. That upon the death of the widow, or her forfeiture, or abandonment of the homestead, it enures to the benefit of the children, and casts upon them the homestead right.

5. That the domicile of the husband is the domicile of the

wife, and the domicile of the parents is the domicile of the children, and that a domicile once acquired continues until another is obtained.

6. This suit, being to enforce rights to a tract of land, is governed by the general statute of limitation, which does not run against minors.

The defendant asked the court to declare the law applicable to the case to be :

1. That the homestead act constitutes a part and parcel of the contract at the time a debt is contracted, and, in this case if any homestead right accrued at all, it was under the statute in force at the date of the contract, and consequently at the time of the death of Thomas P. Johnston, their father.

2. That the question of citizenship is a question of act and intention, and the domicile of a person is that place where he has true, fixed and permanent home.

3. To impress the character of a homestead upon a tract of land, or town, or city lot, it must possess the characteristics of a home, and must have been used as a family residence.

4. That constructive presence of the wife in this state is not sufficient to constitute a family residence, but she must have actually lived upon the place claimed to have been exempt as a homestead.

5. The declaration by the head of the family, of his intention to remove his family to this state, and make it his permanent home, is not a sufficient act and declaration of intention to impress upon any portion of his land the character of a homestead, but he must actually reside thereon, with his family, for a time, with the intention of making it a home.

6. To give the wife and children of a deceased husband of a family the benefit of a homestead, under chap. 68, secs. 29 and 30 of Gould's Dig., there must have been a continuous, actual occupation of his homestead (if he had one) as a family residence after the death of such person.

The court in terms gave no opinion as to the sufficiency of the instruction of either of the parties, only so far as may be found in the following declaration of the law applicable to the case, and declared by the court:

1. That a residence once in good faith established by a citizen of this state, being a householder, or the head of a family, upon a tract of land owned by him, carries with it the homestead right.

2. That the temporary change of the family, satisfactorily accounted for, does not impair the right.

3. That upon the death of the husband, the homestead right is cast upon the widow.

4. That the question of citizenship is a question of fact and intention, and the domicile of a person is that place where he has his true, fixed, and permanent home.

5. To impress the character of homestead upon a tract of land, or town or city lot, it must possess the characteristics of a home, and must be resided upon as a family residence.

6. The constructive presence of the wife in the state is not sufficient to constitute a family residence, but she must have actually lived at some time upon the place claimed to be exempt as a homestead.

7. The declaration of the head of a family, of his intention to remove his family to this state, and make it his permanent home, is not a sufficient act or intention to impress upon any portion of the land the character of homestead after his death, unless the widow, child or children of the deceased do reside thereon for a time with the intention of making it a home.

8. To give the wife or children of a deceased head of a family a homestead under chap. 68, secs. 29 and 30, Gould's Dig., there must have been an actual occupation by them of his homestead (if he had any) as their residence after his death.

The appellants excepted to the finding and conclusion of the

facts in the case, and also to the declaration of the law as applicable to the case, and filed their motion for a new trial, in which was set forth such finding and ruling of the law as a ground for a new trial; which motion was overruled; exceptions taken and the case brought to this court by appeal.

The 5th, 6th and 7th declarations of law, as applicable to the case, were erroneous: Because they declare the law to be that the actual residence of the wife and children with the husband, upon the land claimed as a homestead, is necessary to confer upon the husband a homestead right; and the 8th ruling of the court is also erroneous, because it assumes that an actual residence of the wife and children upon the homestead place, after the death of the husband, is necessary to entitle them to the benefits of the homestead acquired by the husband, and held by him at the time of his death.

The residence of the wife and children only becomes an inquiry of importance, in connection with other circumstances, to determine the fact of actual residence.

The all important inquiry is, Has the head of the family, in good faith, selected a tract of land, or a town, or city lot, as his place of residence; does he own the land; has he entered upon it; does he reside upon it? The absence of the wife and children, unaccounted for, might require stronger proof of intention, but nothing more. The homestead right must be perfect in him in his life time, irrespective of any act of wife, or children; at his death the law extends the benefits of the homestead to them as fully as it existed in him.

Story, in his work on Conflict of Laws, sec. 44, says: " Two things concur to constitute a domicile, first, residence; and secondly, the intention to make it the home of the party." At page 58, he says, " *Prima facie*, the place where a person lives is taken to be his domicile, until other facts establish the contrary; if he moves to another place with an intention to make

it his permanent residence, *animo manendi*, it becomes instantaneously his place of domicile, * * if a person has actually removed to another place, with an intention of remaining there for an indefinite time, and has a place of fixed, present domicile, it is to be deemed his place of domicile."

Every usual incident of actual, permanent residence exists in the case under consideration, except that the wife and children did not come to reside with the husband on his newly acquired home; he met all the usual requirements of actual citizenship, paid a poll tax, assessed his land on the citizen's list, was recognized by his neighbors as a citizen, in so much that he was invited to become a candidate for office, and when consulting with his uncle with regard to an incumbrance on the land, and upon suggestion that it might be best to give up his purchase, replied that he did not desire to do so; he wished to retain the place as a home.  And to another witness, that he was tired of roving about, and had bought the place for the purpose of settling down and making it his home.  He continued to cultivate the land, improved the buildings, so as to make them a more comfortable residence, and in the month of August left the river country and went into Kentucky, to where his wife and children were staying with his wife's mother, for the purpose, as avowed, of bringing them with him that fall to his home in Arkansas, was taken sick with consumption, lingered, and died the April following.

The wife and the children had no other home than that of the husband, indeed could legally have no other.

The domicile of the wife follows that of the husband.  *Burnham v. Rangeley*, 1 Wood. & Minot, 7 ; *Meador v. Place*, 43 N. H., 307; *Cambridge v. Charleston*, 13 Mass., 501.

Story in his Conflict of Laws says: " A married woman follows the domicile of her husband ; this results from the general principal that a person who is under the power and

authority of another, possesses no power to choose a domicile."

As a consequence, therefore, the possession and residence of the husband must, in effect and for all legal purposes, be considered the residence and possession of the wife. So firmly fixed is this rule that a separation of the husband and wife, with no intention of ever living together again, and even when the parties reside in different states, the domicile of the wife is held to be that of her husband. *Hairston v. Hairston*, 27 Miss., 704; *Meador v. Place*, 43 N. H., 307; *Lees v. De Diables*, 12 Cal., 327. There are many other decisions of the courts of the states which are to the same effect. In *Hairston v. Hairston*, the husband and wife had for many years been separated; the wife resided in Virginia, the husband in Mississippi. The supreme court of Mississippi, when deciding the question of domicile, said: "Although the wife did not follow her husband to Mississippi, but remained in Virginia, her legal domicile was that of her husband at the time of his death. *In Meador v. Place*, the husband and wife had separated, and lived apart for many years; during their separation the husband acquired a homestead and died. The wife had never been on the place during the life of her husband. Under this state of case the court said: "The right is acquired by virtue of the marital relation, and generally the wife's claim becomes complete, and can be consummated after the husband's death. The wife's home is the husband's, and the last homestead occupied by the husband at the time of his death has been construed to be her last homestead, whether living together at the time or separately." It was the wife's domicile because she possessed no legal ability to make for herself another. She might in violation of her marriage covenant separate from her husband, and make for herself a home in fact, but not in law. No legal rights can grow out of a violation of law.

In this case, Mrs. Johnston went with her children to her mother's with the assent of her husband, to remain temporarily, whilst he took his negroes and other personal property to the plantation bought by him in Arkansas, and, as would appear from the evidence, to put the farm in cultivation and make the houses more comfortable for his family residence; that she did not return with him to his home, as was his avowed intention, was the result of circumstances explained by the evidence; the wish and intention to bring his wife and children with him was prevented by ill health, and finally by his death. Johnston as husband had a right to direct the movements of his wife, and she forfeited no rights by acting in obedience to his will.

In view of the authorities, and upon principle, we must hold that the actual personal residence of the wife and children upon the homestead was not necessary to perfect the right of homestead in him at the time of his death, nor to entitle the widow and children to the benefit of it after the husband's death. It was in law their home as well as it was his.

The 30th section, under which the appellants claim a right of homestead simply extended or continued the right of homestead — the protection of the home from sale by his creditors — to the widow and children, after the death of the husband.

The terms expressed in the 30th section, in regard to occupancy, are precisely the same as those required of the husband, — "occupancy as a home," — when changed, his domicile, his right of homestead on that place was lost, and such we apprehend would be the effect of abandonment· by the widow, for the statute only gives the right of homestead to the widow and children "during the time it shall be occupied by them," and as the terms upon which the widow and the children are to hold it are the same as those of the husband,

the question, as a matter of fact as to what acts amount to abandonment, is to be considered as applicable to both, unless on account of infancy a different rule may be applied as to them, of which, however, we are not now to consider.

We have seen that neither the wife nor the children have a legal right to make for themselves a domicile or home, different from that of the husband or father, and must hold, that the mere fact of absence at the time of the husband's death does not deprive them of the benefit of the homestead right held by the husband, at the time of his death, and which by force of the statute passed to them at his death.

The estate thus created is a peculiar one, made equally for the benefit of the wife and children; it may be likened to a joint tenancy, with right of survivorship. *Taylor v. Hargus,* 4 Cal., 268; *Pool v. Girard,* 6 id., 71. No partition can be had of it. *Nichols v. Persell,* 21 Iowa, 265. Nor can any of the parties lessen or impair the rights of the others; the abandonment by the mother does not impair the rights of the children. *Watts v. People,* 21 Ill., 178.

This suit was brought to secure the benefit of the homestead rights to the children (minors), by their guardian, which after the death of the mother, or more properly from the time of her marriage and removal to the residence of her husband, had become perfect and unincumbered. They were minors and had no power to impair them, and as we have seen no act of the mother could do so; although in fact at school in Kentucky, they were in law domiciled with their father in Arkansas.

Their place of domicile commences with that of their father at the time of their birth, and thereafter follows his wherever he makes one. Story says minors are generally deemed incapable of changing their domicile during minority, and therefore they retain the domicile of their parents; and if the

father dies, his last domicile is that of the infant children. Although in fact absent in Kentucky, in law and for legal purposes, they were domiciled with their father in Arkansas at the time of his death. They were not required to assert their rights, or to take possession of the homestead then because of their incapacity as minors, and because under the law the mother had a prior right, which continued until abandonment by making a new home with her husband as well as by death; delay since the death of the mother to assert their right does not affect it; the rights of infants are not barred by time. In truth, the defense against their rights of homestead, aside from the question of homestead in the father, is, that they are out of possession and (if entertained) would lead to this *non sequiter*, that, because they were not in possession, they had no right to possession.

The 5th, 6th, 7th and 8th ruling of the law by the court assert the necessity of actual occupancy by the wife and children upon the homestead, 1st, in order to impress the character of a homestead on the land, and, 2d, in order to get possession of it after the death of the head of the family, and to maintain and enjoy it afterwards, and are clearly erroneous. And because of such erroneous ruling of the law, and in rendering judgment against the appellants, the judgment must be reversed and set aside and the cause remanded for further proceedings according to law.