Bolton v. Oberne, Hosick & Co.

---

## BOLTON v. OBERNE, HOSICK & CO.

**Homestead:** JOINT TENANCY: CONVEYANCE: VALIDITY: WHO MAY
QUESTION: INNOCENT PURCHASER. The real estate in controversy
was owned jointly by P. and his son, and was occupied by P.,
who was a married man, as his homestead. While so occupied P.
and his son conveyed it to P.'s daughter, but P.'s wife did not
join in the deed. After the death of both P. and his wife, the
daughter conveyed to plaintiff. P.'s heirs always regarded these
conveyances as valid. Prior to the conveyance to plaintiff, defend-
ants procured a judgment against two of the sons of P. Plaintiff,
when he took his conveyance, knew of this judgment, and also
knew of the occupancy of the premises by P. as his homestead up
to the time of his death. *Held—*

(1) That, while P. was only a joint tenant, his occupancy of the
premises as such gave him a homestead right therein. (See
*Thorn v. Thorn*, 14 Iowa, 53; *Wertz v. Merritt*, 74 Iowa,
686.)

(2) That the failure of P.'s wife to join in the deed to the
daughter made the deed of no effect so far as P.'s undivided
interest was concerned. (See Code, sec. 1990, and citations
in opinion.)

(3) That, though P.'s heirs did not question that conveyance,
defendants had the right to do so, if they were interested as
judgment lien-holders.

(4) That, since the conveyance was a nullity as to P.'s undi-
vided interest, that interest descended, upon the death of
his wife and himself, to his children, and defendant's judg-
ment became a lien on the shares of the two sons who were
judgment debtors, and they were sold on execution there-
under.

(5) That plaintiff, with the knowledge he had when he pur-
chased, could not claim priority over defendants on the
ground that he was an innocent purchaser, under the rule
of *Lunt ;v. Neeley,* 67 Iowa, 98.

*Appeal from Polk District Court.* — .Hon. Josiah
Given, Judge.

Filed, February 3, 1890.

Action in equity to quiet title. .There was a trial
on the merits, and a decree for plaintiff. The defend-
ants appeal.

*C. C. & C. L. Nourse,* for appellants.

*Conrad & Campbell* and *Hugh Brennan,* for
appellee.

Robinson, J.—The property in controversy is "the
west sixty feet of lot 9, block 19, East Fort Des Moines,
now included in the city of Des Moines." In the year
1867, it was owned by B. F. Allen. At some time, not
later than the year 1869, he contracted to sell it to
Hazard Parks and his son T. J. Parks, and on the
twenty-second day of October, 1878, a. deed was exe-
cuted in fulfillment of the contract by the assignee in
bankruptcy of Allen. Hazard Parks was a married
man, the head of a family, when the property was pur-
chased; and he lived on and occupied it as a homestead
from about the time of its purchase until his death,
which occurred in April, 1883. While the premises
were so occupied, and on the twenty-ninth day of
October, 1878, Hazard and T. J. Parks executed a deed
for them to "Leah Parks." On the tenth day of
August, 1885, a deed for the premises was executed, in

the name of Leah Parks, to plaintiff. In the year 1884, T. J. Parks and A. J. Parks, also a son of Hazard, were engaged in business, and contracted an indebtedness to defendants. On the thirtieth day of March, 1885, defendants recovered a judgment on said indebtedness against T. J. Parks and A.. J. Parks, in the district court of Polk county, for $259.16, besides interest and costs. An execution was issued to satisfy the judgment; and on the twenty-seventh day of November, 1885, the property in controversy was sold to defendants under the execution, and a certificate of sale was duly issued to them. The wife of Hazard Parks was named "Leah." She was the mother of T. J. and A. J. Parks, and died in September, 1881. Hazard and his wife, Leah, had several daughters, and among them one who was known to the neighbors of the family as "Lovilla," but whose full name, as appellee contends, was Leah Lovilla Parks.

I. Appellants insist that the property in controversy was a homestead, within the meaning of the law, when the deed of October 29, 1878, was executed; that it was made to the wife of Hazard; that upon her death it became the property of her husband and children, as she died intestate, and that upon the death of Hazard, intestate, the title to the premises became fully vested in their children, of whom seven are living. Appellants further contend that, if the grantee of the deed was in fact the daughter Lovilla, the deed was void as to the interest of Hazard, for the reason that it was his homestead, and his wife did not join in the conveyance. Therefore, that an undivided two-sevenths of an undivided one-half of the premises would be subject to the payment of their judgment. It is conceded that the premises were worth five thousand dollars when plaintiff obtained his conveyance from Leah Parks. So far as the record shows, the conveyance to Hazard and T. J. Parks constituted them tenants in common of the property conveyed. Code, sec. 1939. A homestead right in land owned by tenants

in common may be acquired by one of the co-tenants (*Thorn v. Thorn*, 14 Iowa, 53; *Wertz v. Merritt*, 74 Iowa, 686); and such right can be acquired in land held only by equitable title (*Hewitt v. Rankin*, 41 Iowa, 44). The evidence clearly shows that Hazard Parks had a homestead right in the premises when the deed of himself and son was executed to Leah Parks. We are also of the opinion that the grantee was the daughter, Leah Lovilla Parks. It is true, as claimed by appellants, that there is a strong showing to the contrary. The neighbors of the family knew the daughter only by the name "Lovilla," or "Villa." A lady who employed her for two years knew her only as "Lovilla;" and a brother-in-law knew her only as "Lovilla" or "Villa" during an acquaintance of nine years, and for two years after his marriage to one of her sisters. But T. J. Parks testifies positively that the conveyance was to his sister, and a sister named Anna testifies that Lovilla's name was "Leah Lovilla." Plaintiff, who knew the family many years, testifies to the same effect. As the mother's name was also Leah, it would not be unnatural to call the daughter by her other name. Certainly, the testimony of members of the family is entitled to greater weight than that of others who only knew the name commonly used. It being determined that the grantee was the daughter of Hazard Parks, his conveyance was invalid because of the homestead character of the premises and the failure of his wife to join in the deed.

This conclusion is not seriously questioned by appellee, but he insists that appellants are not in position to take advantage of the invalidity; that in justice and equity no one outside of the family or heirs can disturb the title or take advantage of the deed; that all the heirs have treated the conveyance as valid; and that no one else has a right to question it. The statute provides that such a conveyance is of no validity. Code, sec. 1990; *Alley v. Bay*, 9 Iowa, 509; *Barnett v. Mendenhall*, 42 Iowa, 296; *Belden v. Younger*, 76 Iowa,

567. Therefore, any one interested in the property ·it attempted to convey may question it.

II. Appellee contends that he is an innocent purchaser, within the rule announced in *Lunt v. Neeley*, 67 Iowa, 98; but we think the evidence shows clearly that he had knowledge of such facts as charged him with notice of defendants' rights. He was well acquainted with the family of Hazard Parks, and had known them for many years. He knew they occupied the premises as a homestead. He knew when the father and mother died, and that there was an unsatisfied judgment against Parks Bros. in favor of defendants. In addition to the deed from Leah he required a quitclaim deed from all the other heirs, which described the property as their homestead. He is shown to have been fully advised as to all material facts upon which defendants rely, and is not entitled to protection as an innocent purchaser.

III. · It appears that T. J. Parks and A. J. Parks together owned an undivided two-sevenths of an undivided one-half of the property in controversy when the judgment through which defendants claim was rendered, and that the judgment was a lien on the interest so owned. Therefore, the execution sale was effectual to convey the rights of the judgment debtors in the property subject to any right of redemption which may have existed paramount to the ·title of plaintiff. It follows that he is not entitled to the relief demanded. The decree of the district court is, therefore,

REVERSED.