## WHELAN v. ADAMS *et al.*

Nos. 3003, 3027. Opinion Filed October 13, 1914.

Application for Rehearing Dismissed January 30, 1915.

(145 Pac. 1158.)

1. **APPEAL AND ERROR — Review — Trial — Time — Prejudice.** Where from the conceded facts it appears that the parties to an action have no title to the subject-matter of the litigation, hence no right to maintain an action or recover affirmative relief by cross-petition, and where the only judgment recovered against them, except an adverse adjudication of the title, is vacated on appeal, error in the trial court forcing them to trial on the day that the issues of fact were joined is without prejudice and furnishes no ground for reversal.

2. **HOMESTEAD—Conveyance—Requisites—Joinder of Spouses.** Section 2, art. 12, of the Constitution, prohibits the sale of the homestead of the family, where the owner is a married man, without the consent of the wife, given in such manner as may be prescribed by law.

3. **SAME—Conveyance by Married Man—Joinder by Wife.** An attempted conveyance by deed of the homestead of the family by a married man, given without the wife's consent in the manner prescribed by law, is void.

4. **SAME—Separation of Spouses—Abandonment.** Where the relation of husband and wife exists, the deed of the former to the homestead of the family conveys no title, and this notwith-

standing the fact that the husband and wife be living separate and apart, or even though the wife may have without justifiable cause abandoned the husband.

5.    **SAME—Mortgage to Wife — Foreclosure — Sale — Rights of Purchaser.**  Where a husband gives a wife a mortgage on the homestead to secure the payment of a postnuptial settlement, which mortgage she subsequently forecloses by suit, the purchaser at the foreclosure sale succeeds to her rights and may attack as void a deed given to the homestead by the husband without the wife's consent.

6.    **SAME—Statutes—Validity.**  Sections 882 and 883, Wilson's Rev. & Ann. St. 1903 (sections 1189 and 1190. Comp. Laws 1909; Rev. Laws 1910, sec. 1145), infringe upon and are repugnant to section 2 of article 12 of our Constitution, prohibiting the sale of the homestead, where owned by a married man, without the consent of his wife given in the manner prescribed by law; hence were not extended in force in the state by section 2, art. 25, of the Constitution.

7.    **SAME—Conveyance by Husband—Separate Deed—Rights of Wife—Rents.**  Evidence examined, and **held,** that the wife is not entitled to recover rents for the years 1909 and 1910.

(Syllabus by Sharp, C.)

*Error from District Court, Alfalfa County;*

*James B. Cullison, Judge.*

Action by Frank H. Whelan against P. O. Adams, Effie Adams, Emery L. Metcalf, and Mary F. Whelan. Judgment for defendants Emery L. Metcalf and Mary F. Whelan on their answers and cross-petitions, and plaintiff Frank H. Whelan and defendants P. O. Adams and Effie Adams bring error. Modified and affirmed.

*Titus & Carpenter,* for plaintiff in error Frank H. Whelan.

*Talbot & Owen,* for plaintiffs in error P. O. Adams and Effie Adams.

*George W. Partridge,* for defendant in error Mary F. Whelan.

*Garber & Kruse* and *Riley Cloud,* for defendant in error Emery L. Metcalf.

Opinion by SHARP, C.  The controversy between the parties concerns the title to a quarter section of land in Alfalfa county which was patented by the government to one James D. Whelan in 1906.  Prior thereto, and in March, 1904, said James D. Whelan and Mary F. Whalen were married, and continued to reside together as husband and wife on the land in question until July 18, 1907, when, owing to domestic troubles, they separated, the husband continuing to reside on the farm, and the wife in the city of Cherokee, Alfalfa county.  In 1907 each filed a divorce suit against the other, in different courts, which suits were pending and undetermined on May 21, 1908.  On the latter day they entered into a contract, whereby the said James D. Whelan was to pay his wife, at fixed times, the sum of $500, and dismiss his divorce proceedings, and further agreed to begin a new suit for divorce, charging as ground therefor defendant's abandonment of plaintiff, and to which suit to be so instituted the wife would make no defense.  The wife also agreed, in consideration of the husband's undertakings, to dismiss her divorce suit, and, further, that upon payment of said sum of money, she would make no claim or demand of him for either temporary or permanent alimony or suit money.  The performance of the provisions of this postnuptial contract was secured by a mortgage concurrently executed by the husband on the land in question, which mortgage was on the day of its execution duly placed of record.  At the time the land was occupied by the husband as a homestead.  Thereafter, and on the 29th day of May following, the said James D. Whelan executed a deed, purporting to convey to the defendant P. O. Adams the land in question, but this deed was not signed by his wife, and was given without her knowledge.  On the 1st day of June following, P. O. Adams, joined by his wife, Effie Adams, executed a mortgage on said land to the plaintiff, Frank H. Whelan, a brother of James D. Whelan, which mortgage purported to have been given to secure the payment of a $3,000 note of even date, in

favor of said mortgagee. This mortgage was placed of record on the day of its execution.

James D. Whelan having defaulted in the payment of the amount named in the settlement made with his wife, the latter, on July 17th following, instituted in the district court of Alfalfa county an action to foreclose the mortgage given to secure the performance of the contract. Neither P. O. Adams nor his wife nor Frank H. Whelan was a party to the foreclosure action. Personal service of summons was had on the defendant James D. Whelan, and on the 2nd day of October, 1908, a judgment foreclosing said mortgage was rendered by the district court, and at a foreclosure sale subsequently held the land was purchased by the defendant Emery L. Metcalf, subject to a first mortgage in favor of the Monarch Loan Company. The sale being confirmed, a sheriff's deed was executed and delivered to said Metcalf on March 2, 1910, and placed of record in the office of register of deeds.

The present action was brought on December 15, 1910, by Frank H. Whelan, to foreclose his mortgage given by the defendants Adams and wife. It is insisted by each or the plaintiffs in error that neither Mary F. Whalen nor Emery L. Metcalf has any right, title, or interest in the land in question, and, further, that Metcalf was not an innocent purchaser for value, and was not, therefore, entitled to an order restoring to him his expenditures laid out in the purchase of said farm, and the subsequent payment of taxes thereon, and interest on the Monarch Loan Company loan. On the part of Mary F. Whelan it is insisted in her answer and cross-petition that for numerous reasons named the deed executed by her husband to P. O. Adams was void, and that hence Frank Whelan acquired no rights in the premises by virtue of his mortgage. As to her codefendant, Metcalf, Mary F. Whelan asked that the court enter its decree canceling any claim, right, or title that said defendant might have in the premises. In her reply to the answer and cross-petition of defendant Metcalf, said defendant Whelan set up the

mortgage given in her favor by her husband, the contract of May 21, 1908, the mortgage foreclosure proceedings, the sheriff's deed executed pursuant thereto, and charged that said contract and each and all of said proceedings were illegal and void, and tendered back to said Metcalf $500, and interest. The defendant Metcalf, in his cross-petition, also charged that, for different reasons assigned, Adams acquired no title on account of his purported deed of May 29th, and that therefore the mortgage given by him and his wife to Frank H. Whelan in turn conveyed no interest or right to the property in question. Said defendant further set up the proceedings through which he acquired title at the foreclosure sale, including the sheriff's deed, charged that Mary F. Whelan was estopped from attacking his title, and asked for a cancellation of the deed from James D. Whelan to Adams, for a judgment barring the defendant Mary F. Whelan from any claim, right, title, or interest in the premises, and for a further decree vesting and conferring the title to said premises in him.

It was insisted on the part of the plaintiffs in error that Mary F. Whelan, in July, 1907, voluntarily and without cause abandoned her husband, and that the agreement of May 21, 1908, between James D. Whelan and his wife, and the subsequent foreclosure proceedings brought to enforce the terms thereof, the judgment of the court, order of confirmation, and the sheriff's deed, were each and all illegal and void, being against public policy, and that thereby the said Metcalf acquired no title by virtue of the sheriff's deed; that, Mary F. Whelan, having without justifiable cause abandoned her husband, the deed executed by the latter to Adams on May 29th was valid, though not executed by her.

The case was tried before the court, special findings of fact and conclusions of law being made. In the decree Mary F. Whelan was given the immediate possession of the land in question, which was found to be the homestead of herself and husband. The sheriff's deed executed to the defendant Emery

L. Metcalf was adjudged to be void, and it was ordered that said Metcalf have a lien against said land for the sum of $988.43. The mortgage executed by Adams and wife to Frank H. Whelan and wife was declared to be null and void, and ordered canceled, set aside, and held for naught, and said P. O. Adams and Effie Adams were adjudged to be in wrongful and unlawful possession of the premises, and their title ordered divested. Judgment was rendered against Adams and wife for $570; that being found to be the reasonable rent and profit arising from the land during their period of occupancy. Neither defendant Mary F. Whelan nor Emery L. Metcalf filed a motion for a new trial; hence, as between them, the judgment of the trial court is final.

In view of our conclusions, it will be necessary to consider but few of the many assignments of error. The trial court's action in forcing plaintiff and defendants P. O. Adams and Effie to trial on the day the issues of fact were joined was erroneous. The pleadings, it appears, were filed within the time prescribed by statute, or were permitted to be filed with the court's consent. At no time were the parties in default; neither were the demurrers filed by them adjudged to be frivolous. Section 5644, Comp. Laws 1909 (Rev. Laws 1910, sec. 4745), provides that whenever the answer contains new matter constituting a right of relief against a codefendant, concerning the subject-matter of the action, such codefendant may demur or reply to such matter in the same manner as if he were plaintiff, and subject to the same rules as far as applicable. *Long v. Harris et al.,* 37 Okla. 472, 132 Pac. 473. Section 5834, Comp. Laws 1909, provides when actions shall be triable, and has recently been construed by this court in *City of Ardmore v. Orr,* 35 Okla. 305, 129 Pac. 867; *Conwill v. Eldridge,* 35 Okla. 537, 130 Pac. 912; *Title Guaranty & Trust Co. v. Turnbull,* 40 Okla. 294, 137 Pac. 1178; *Chicago, R. I. & P. Ry Co. v. Pitchford, ante,* 143 Pac. 1146. In view, however, of the conceded facts, and of the law in the present case, by which the rights of both plaintiffs in er-

ror are to be determined, the error was without prejudice, and therefore not sufficient to cause a reversal.

The controlling question is that of the right of James D. Whelan to execute to P. O. Adams the deed of May 29, 1908. At the time of its execution said James D. Whelan and Mary F. Whelan were husband and wife, and the land attempted to be conveyed, though owned by the former, was the homestead of the family. Section 2, art. 12, of our Constitution provides that the homestead of the family shall not be sold by the owner, if married, without the consent of his or her spouse, given in such manner as may be prescribed by law. At no time did Mary F. Whelan give her consent to the sale attempted to be made to Adams. The question presented does not appear to ever have been passed upon by this court. The opinions in *Maloy et ux. v. Cameron,* 29 Okla. 763, 119 Pac. 587, *Kelly v. Mosby et al.,* 34 Okla. 218, 124 Pac. 984, and *Krauss et ux. v. Potts et al.,* 38 Okla. 674, 135 Pac. 362, all involve transfers made or attempted prior to the adoption of our state Constitution. The sale, having been made in direct violation of the express provision of our organic law, was void; hence Adams acquired no rights by reason of his purchase. The constitutional inhibition is plain, unambiguous, and admits of no exceptions which would destroy its obvious design. If the owner be a married man, the consent of the wife, given in such manner as may be prescribed by law, is essential to the valid alienation of the homestead, unless (it may be) the conveyance be made to her. No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution. *Morris v. Ward,* 5 Kan. 239. Efforts have been made to ingraft exceptions arising out of the supposed necessities of the case, upon similar constitutional provisions or statutory enactments, but in all states save one, so far as we have examined the authorities, they have

uniformly failed; for it must be remembered that it is not the homestead of the husband alone, though the title be in his name; it is the homestead of the family, made so by the Constitution.

Provisions similar to that of our Constitution are found either in the Constitutions or statutes of the great majority of the states of the Union, and, with a single exception, so far as our investigation has disclosed, conveyances made or attempted by the husband, without the consent of the wife, given in the manner prescribed by law, are held to be void. Many of the authorities are collected in the notes to *Poole v. Gerrard,* 6 Cal. 71, 65 Am. Dec. 481; *Chambers v. Cox,* 23 Kan. 393; *Alt v. Banholzer,* 39 Minn. 511, 40 N. W. 830, 12 Am. St. Rep. 681; *Stanton v. Hitchcock,* 64 Mich. 316, 31 N. W. 395, 8 Am. St. Rep. 821; *Martin v. Harrington,* 73 Vt. 193, 50 Atl. 1074, 87 Am. St. Rep. 704; *Hart v. Church,* 126 Cal. 471, 58 Pac. 910, 59 Pac. 296, 77 Am. St. Rep. 195; *O'Malley v. Ruddy,* 79 Wis. 147, 48 N. W. 116, 24 Am. St. Rep. 702; *Seiffert & W. L. Lbr. Co. v. Hartwell,* 94 Iowa, 576, 63 N. W. 333, Am. St. Rep. 413; *McKenzie v. Shows,* 70 Miss. 388, 12 South. 336, 35 Am. St. Rep. 654.

Much stress is laid upon the fact that Mary F. Whalen had voluntarily abandoned her husband, and, notwithstanding his entreaties for her return, had continued to absent herself from the homestead, and to live separate and apart from her husband. The finding of the trial court, however, was to the effect that the abandonment was not voluntary, but was caused by the threats and ill treatment of the husband. We deem the fact of what caused the wife to leave and remain away from home, and whether her abandonment was voluntary or involuntary, as immaterial. They were still husband and wife, never having been divorced, and there is no exception written in our Constitution authorizing the husband to sell the homestead without the wife's consent upon her voluntary abandonment of him. Neither are we disposed to write into the language used an implied exception. *Thompson v. New England, etc., Co.,* 110 Ala.

400, 18 South. 315, 55 Am. St. Rep. 29; *Murphy v. Renner*, 99 Minn. 348, 109 N. W. 593, 8 L. R. A. (N. S.) 565, 116 Am. St. Rep. 418; *Herron v. Knapp*, 72 Wis. 553, 40 N. W. 149; *Chambers et ux. v. Cox*, 23 Kan. 393; *Ott v. Sprague*, 27 Kan. 620; *Johnston v. Turner*, 29 Ark. 280; *Williams v. Swetland*, 10 Iowa, 51; *Lies v. De Diablar et al.*, 12 Cal. 327; *Rogers v. Day*, 115 Mich. 664, 74 N. W. 190, 69 Am. St. Rep. 593.

The contention that, even though the deed was void because the wife had not joined in its execution, or consented to the sale of the homestead, cannot be availed of by the defendant Metcalf, is without merit. Metcalf purchased at the foreclosure sale, and occupies the same position in law, with regard to the Adams deed, as would Mary F. Whelan. The facts in this case are very similar to those in *Rogers v. Day, supra*. There it was insisted that only the husband, widow, or children could take advantage of the homestead right, and maintain a suit to protect it, and that, since neither in that case disaffirmed the conveyance, the complainant had no standing. There the homestead had been sold upon execution on a decree for alimony rendered in favor of the wife, and it was held that the complainant, who derived his title through *mesne* conveyances, stood in the shoes of the wife; that, as she chose to have the property sold upon execution on a decree rendered in her favor, she was estopped to set up her homestead right as against the purchaser at the sale and his grantees; that, complainant being in possession under her, and as her grantee under the execution sale, he succeeded to her rights. To the same effect are: *Dorsey v. Mc-Farland*, 7 Cal. 342; *Dye v. Mann*, 10 Mich. 291; *Bolton v. Oberne et al.*, 79 Iowa, 278, 44 N. W. 547; *Goodwin v. Goodwin*, 113 Iowa, 319, 85 N. W. 31; 21 Cyc. 558.

Section 883, Wilson's Rev. & Ann. St. 1903 (section 1190, Comp. Laws 1909), provided that, the husband or wife executing the instrument relating to the homestead, without being joined with the other, it could only be avoided by the one not joining. In *Maloy et ux. v. Cameron*, 29 Okla. 763, 119 Pac. 587, Justice

Williams called attention to the fact that said section did not appear to have been extended in force by the Constitution. This observation, in our judgment, stated a correct conclusion. The statute mentioned is without doubt repugnant to section 2, art. 12, Constitution, providing how the homestead of the family may be sold, and was therefore not put in force by section 2, art. 25, of the Constitution. By section 882, Wilson's Rev. & Ann. St. 1903 (section 1189, Comp. Laws 1909 [Rev. Laws 1910, sec. 1145]), it is provided that, where the title to the homestead is in the husband, and the wife voluntarily abandons him for the period of one year, or from any cause takes up her residence outside of the state, he may convey, mortgage, or make any contract relating thereto, without being joined therein by her. We think that this section of the statute must likewise fall. To hold otherwise would be to create an exception whereby, when one of two facts appear, the husband could convey the homestead without the consent of his wife. The fact that the wife may have, without any cause, taken up her residence outside of the state, or that she may voluntarily abandon her husband for a period of one year, does not of itself dissolve the marriage relation unless, perhaps, it should continue for a sufficient length of time to raise the legal presumption of death. A similar question was before the Court of Chancery Appeals of Tennessee in *Couch v. Capitol Bldg. & Loan Ass'n et al.*, 64 S. W. 340. It was contended by the defendants in that case, in effect, that the husband having deserted and abandoned his wife, before the execution of her deed, she had the right under Shannon's Code, sec. 4242, to sell or mortgage the homestead without her husband joining in the conveyance with her. On the other hand, it was urged by the complainant that, under the Constitution, the homestead could only be alienated by the joint consent of husband and wife, when that relation existed, and that in the purview of the law the relation of husband and wife was not dissolved by his desertion and abandonment of her. The opinion reads in part:

"The homestead is a property right fixed in our Constitution. Article 11, sec. 11, Const. Its extent and duration are also fixed by it. The method of its alienation where the marriage relation exists is prescribed by it, and that is by the joint consent of the husband and wife. Legislation subsequent to the adoption of the Constitution prescribes how this joint consent shall be given. We are of opinion that it is not competent for the Legislature to provide for the alienation of the homestead without the joint consent of the husband and wife, when that relation exists, simply because the Constitution says in explicit terms that it shall not be alienated otherwise. The mode or manner of giving or evidencing the joint consent of the husband and wife is another matter. The Legislature may act here and prescribe. If correct in this, it follows that the section of the Code (Shannon's Code, sec. 4242) is of no avail to appellants in this aspect of the case, unless we hold that the desertion of the wife by the husband does away with the relation of husband and wife. It is not believed that such a proposition finds support in any adjudicated case, nor in sound judicial reasoning, when applied to the marriage state and statute. The relation of husband and wife is not dissolved, done away with, or destroyed by the desertion of either spouse by the other."

The clause "given in such manner as may be prescribed by law," in section 2, art. 12, Constitution, deals only, as the context clearly shows, with the form of the consent to the sale of the homestead; such, for instance, as whether the deed of conveyance should be executed jointly by the husband and wife, whether the wife should be privily examined by the officer taking her acknowledgment, or what officer was authorized by law to take such acknowledgment.

The deed from James D. Whelan to P. O. Adams being void for the reasons already noted, neither the latter nor his mortgagee, Frank H. Whelan, acquired any rights thereunder, and as to them it matters not what errors the trial court may have committed. They have no cause to complain, for in no event are they or either of them entitled to any form of relief against the defendants in error.

The judgment for rents against Adams and wife for the years 1909 and 1910 should be vacated. During these years

the wife had lived separate and apart from her husband. From the time of their separation in July, 1907, until the filing of her answer and cross-petition in March, 1911, she had not asserted her right in the homestead. On the contrary, in 1908 she and her husband had effected a settlement, purporting to be in full of their property rights, and this settlement she sought to, and did, enforce by a foreclosure proceeding in court. Her position during the years for which rent was recovered was that of a creditor, and not of a homestead claimant. Whatever we may think of the validity of the postnuptial settlement between James D. Whelan and wife, or of the effect that should have been given her subsequent foreclosure proceedings, enforcing its terms, it cannot be that, covering the very period during which she occupied a wholly antagonistic position, she should be allowed to recover rents and profits arising from the land sold Metcalf under the judgment against her husband. During the entire period she and James D. Whelan were husband and wife. We are not to be understood as saying that under no circumstances may a wife recover rents from the homestead where the title thereto is in the husband. It may be there are times when she can, though the husband be living and they be not divorced. But, under a state of facts such as presented by the record before us, we must conclude that no such recovery can be had.

To our minds, the court below erred in canceling the sheriff's deed to Emery L. Metcalf, but, as he appears to be satisfied with the judgment restoring to him the purchase price of the land, and the taxes and interest paid out, we are without authority to review the judgment as between said defendants.

In so far as the judgment of the court below gave judgment for rent against plaintiffs in error P. O. Adams and Effie Adams, it should be vacated and set aside. In all other respects the judgment should be affirmed.

By the Court: It is so ordered.