JAMES S. WARDEN v. ALANSON S. RESER, *et al.*

1. SPECIAL QUESTIONS, *Refusal to Submit, Not Error.* It is not error in the trial court to refuse to submit special interrogatories to the jury, when requested by either party, when the jury are required by the court of its own motion to answer particular questions embracing every material fact arising in the case, that are almost identical in language, scope and bearing with those requested.

2. GENERAL INSTRUCTIONS — *Refusal, Not Error.* It is not error in the trial court to refuse to give general instructions covering the law of the whole case, when particular questions of fact are submitted to the jury, and they are not required to render a general verdict. In such a case the instructions given should be confined to those that aid the jury in answering the particular questions submitted. (*Stickel v. Bender*, 37 Kas. 457, cited, and approved.)

3. HOMESTEAD — MORTGAGE — *Signature of Wife, Obtained by Fraud.* The signature and acknowledgment of the wife to a mortgage of the

homestead, procured by the person for whose benefit the same was executed, and who was the notary before whom the mortgage was acknowledged, and who as the owner and holder thereof is trying to foreclose it, by the representation that it was a chattel mortgage on the stock of her husband, in renewal of a preëxisting one that she had signed, is absolutely void, because not obtained by the voluntary consent of the wife; notwithstanding the fact that she did not attempt to read, or have some one else read the same, she being solely induced to sign by such misrepresentation.

*Error from Marshall District Court.*

ACTION by *Warden* against *Reser* and wife, upon a promissory note, and to foreclose a mortgage given to secure its payment. Trial at the August Term, 1885, and judgment for defendants. The plaintiff brings the case to this court. The material facts are stated in the opinion.

*Waggener, Martin & Orr*, for plaintiff in error.
*W. W. Guthrie*, and *B. Giltner*, for defendants in error.

Opinion by SIMPSON, C.: This action was instituted by the plaintiff in error, to recover judgment against Alanson S. Reser and Emma Reser his wife, on a certain note of $1,000, executed on the 2d day of January, 1879, to Frank W. Proctor, and assigned to the plaintiff in error, and to foreclose a mortgage, given to secure the payment of the note, on the homestead of Alanson Reser and wife, in Marshall county. The defendant, Alanson S. Reser, filed his separate answer, denying that he ever executed the note of that date to Frank W. Proctor, or that he ever had any knowledge of the existence thereof until the commencement of this action. He further averred, that about the time the mortgage attached to the plaintiff's petition appears to have been executed, he, without reading the same, but upon the representations of the plaintiff that it was additional security for a note of $2,000 to Frank W. Proctor, did sign and acknowledge what he understood to be a mortgage upon the said described real estate; and averred that the real property described in said mortgage was a home-

stead occupied by himself, wife, and children. This answer was verified.

Emma Reser filed her separate, verified answer, by which she denied that she executed the note, but stated that she signed a paper upon the representations of the plaintiff in error that it was a chattel mortgage. She averred that the real property described in the mortgage sought to be foreclosed in this action was the homestead of her husband and his family.

The case was tried by a jury. There were special findings, and a judgment for the amount of the note with interest, with a finding and decree that the mortgage was fraudulent and void. A motion for a new trial was overruled, and the case is here with all exceptions saved. The effort of counsel for plaintiff in error is, to show that the court below erred in overruling their motion for judgment on the special findings of the jury. They also complain of the refusal of the court to submit special interrogatories to the jury, and of the refusal to give instructions Nos. 1, 2, 5, 6, 7, and 8. A brief statement of the material facts is necessary, to fully comprehend the questions discussed by counsel, and appreciate their importance in the case. James S. Warden, the plaintiff in error, was a resident of Irving, Marshall county, until in June, 1878, he removed to Frankfort, a town a few miles from his former residence, in the same county. He was engaged in the banking business. Alanson Reser, with his wife and family, lived all this time on a farm, about nine miles from Frankfort, and was engaged in the cattle business. Reser had been doing business for several years before the execution of the note and mortgage in controversy at Warden's bank in Irving and Frankfort, borrowing money for his cattle transactions, and executing notes and chattel mortgages. The note and mortgage sued on were executed on the 26th day of February, 1879, before the plaintiff in error as a notary public, but both note and mortgage were dated on the 2d day of January, 1879. The difference in the date and time of execution is explained by Warden in his testimony as being done by the agreement of parties to cover interest due on Reser's paper, for which

this mortgage was executed, to protect Warden as an indorser
or guarantor.  This note and mortgage were given to Frank W.
Proctor, and assigned by him to Warden.  This note and mort-
gage were executed as collateral to a note of $990, made on
the 26th day of July, 1877, by Alanson Reser to S. Warden &
Son, thirteen months after date, interest at twelve per cent.
per annum.  The consideration for the note was a lot of calves
belonging to the firm of S. Warden & Son, sold to Reser by
them.  This note was indorsed, before delivery, with these
words: "Payment guaranteed.—S. WARDEN & SON." It was
delivered to Frank W. Proctor, who paid to S. Warden & Son
the $990.  Warden, on his examination, stated that this note
was sent by Proctor, who lived in Vermont, to Walker, a banker
at Irving, and that all these indorsements of payments were
made by Walker, who had notes of Warden for collection in
that neighborhood, out of the proceeds of these collections,
except a credit of $112.91, which was money sent by Reser;
that the first indorsement, of $29.85, is in Warden's handwrit-
ing; the next, $23.65, is his handwriting.  He stated it was
so, because Walker, having his notes for collection, would say
to him when he went to his bank, "So-and-so has paid his
note," and he would say, "Indorse it on the Proctor note,"
and he would hand it out, and he would make the indorse-
ment.  The next indorsement was made by Warden; the next
was the $112.91 paid by Reser; the next was of $100 and $210
by Walker, Warden paying him the money; the remainder
of the indorsements are in the handwriting of Walker.  This
note was originally given to Proctor, held by him, and then
sent to Walker at Irving for collection, and subsequently de-
livered by Walker to Warden.  The evidence respecting the
signatures of Reser and wife to the note and mortgage is very
conflicting.  Warden states, substantially, that on the 26th of
February, 1879, he saw Reser in town, and they made an
agreement in his banking office that this note and real-estate
mortgage were to be executed; that after banking hours he
went with Reser to his home; that Reser took care of the
horses, while Warden went immediately into the house, ex-

plained to Mrs. Reser the whole transaction, read to her the most important parts of the mortgage, including a description of the land, and that she signed the note and mortgage willingly and voluntarily, without protest or objection; that Reser subsequently came in, and signed the note and mortgage, and acknowledged the mortgage, and that both acted with a full knowledge of the contents, objects and purposes of both papers. Several experts in handwriting testified that the signatures to the note and mortgage are identical, and were written with the same pen and ink. Three persons testify to a conversation had with Mrs. Reser in their presence, shortly after this suit was commenced, in which she stated that she had signed the papers, but Jim Warden could not prove it, as there was no one in the room when she signed but her and Warden.

Reser swore that he left home about four o'clock in the afternoon of February 26th, to go to Frankfort to get medicine for a sick child; that arriving there he had to wait several hours for the return of the doctor, who had gone to the country; that some time after dark he was passing the bank, when Warden called him in, locked the door, and demanded of him a mortgage on his homestead to protect him against a certain note and chattel mortgage of $2,000; that Warden was very angry and threatened his life, and threatened to send him to the penitentiary for selling mortgaged property; and that, influenced by these threats, he signed the mortgage, but did not sign any note, nor was he urged or requested to do so. Warden instructed him not to say a word to his wife about the mortgage, and prepared to go home with him, procured his team, and they started to his house, nine miles away; the night was dark and cold; arrived at his house as late as ten o'clock; they both went in and found Mrs. Reser nursing the sick child; Warden spoke pleasantly to her, told her that he and her husband had made an agreement about the extension of the time for the payment of the $2,000 note and mortgage, and wanted her to sign a new mortgage in renewal of the old one. Mrs. Reser assented to this, and signed, while Reser, who had taken the child, was walking the floor with it in his

arms; that he was still afraid of Warden, and did not say anything to his wife until after Warden had gone, and he then told her all that had occurred during the day; that his wife did not sign any note, only one instrument, and that was the mortgage he had signed, and that was folded down so that she could not see what it contained.

Mrs. Reser told substantially the same story as to what occurred at the house; admitted signing a mortgage, but trusted to the representations of Warden, and believed at the time she did sign the paper, from what Warden told her, that it was a renewal of a chattel mortgage for $2,000 that she had signed some time before.

Tending in some degree to support the statements of Reser, the testimony of Robert Smith, a farmer near Frankfort, is to the effect that he had a conversation with Warden about the time of the execution of this mortgage, in which Warden said, (referring to a former conversation about Reser's indebtedness to him, and Smith's expression of opinion that it would not be paid :) "Bob, I got that all right; I got a real-estate mortgage to secure that property; Mr. Reser has been selling mortgaged property." Smith then remarked: "Jim, us fellows have been buying that property for some time; you have been telling us to go over there — that it was all right." Warden said, "Reser couldn't prove it."

The jury were requested to render a special verdict, and not a general one, and in answer to special questions submitted by the court, they found as follows : that the defendants, Alanson S. Reser and Emma Reser, did execute the note of date January 2, 1879, on the 26th day of February, 1879, and delivered the same on that day to James S. Warden.

"*Ques. 3:* Did the defendant, Emma Reser, execute and deliver the said mortgage of date January 2, 1879, on February 26, 1879, as a mortgage on said described land to secure the payment of note to Frank W. Proctor, for $1,000 of said date, or was the same signed by said Emma Reser on February 26, 1879, upon the belief only, induced by the representation of said James S. Warden, that the same was a chattel mortgage on renewal of another preëxisting note to James S.

Warden? *Ans.:* As a chattel mortgage, upon the representation of James S. Warden that it was a renewal of a preexisting note.

"Q. 4. Did the defendant, Alanson S. Reser, on said February 26, 1879, execute and deliver the said described mortgage instrument to secure the payment of a note of $1,000 to Frank W. Proctor of said date; or was the same signed by Alanson S. Reser on February 26, 1879, upon the belief only, induced by the representations of said James S. Warden, that the same was additional security to Warden only, upon his indebtedness to Warden? A. To secure the note of Frank W. Proctor, of $1,000."

The jury found that the land described in the mortgage was before, at the time, and since the execution and delivery of the mortgage, the homestead of Reser, occupied by his wife and children; that Frank W. Proctor indorsed and delivered said note to James S. Warden, and at the time of the commencement of this suit Warden was the owner and holder of said note and mortgage, and the real party in interest therein; that when the defendants executed and signed said mortgage, they could, in the exercise of reasonable and ordinary prudence, have fully known the contents thereof, but they signed on the representation of James S. Warden; that neither Reser nor his wife attempted to read or asked to have read the said mortgage, before they signed the same.

When the special verdict of the jury was returned into court, the plaintiff in error filed his motion for judgment and decree on the pleadings and findings, asking that the mortgage of the plaintiff in error be decreed to be a second lien on said real estate, it being conceded that the mortgage of the defendant Anthony Reser was the first lien. This motion was overruled, so far as the lien was concerned, the court being of the opinion that the mortgage was void. This ruling is one of the principal grounds assigned for error and reversal, and its determination necessarily involves a consideration of all the material facts in the case. The jury found every material fact in the case as alleged by the plaintiff in error, except as to the procurement of the signature of Mrs.

Reser to the mortgage. They found that Reser and his wife signed the note, and this they both denied. They found that Alanson S. Reser signed and acknowledged the mortgage to secure the note of Proctor for $1,000. They found that Emma Reser signed and acknowledged the mortgage with a belief, induced solely by the representations of Warden, that it was a chattel mortgage, but that she could in the exercise of reasonable and ordinary care have fully known the contents of the mortgage, and that she neither attempted to read or have read the mortgage before she signed it.

It is now claimed that this state of facts raises the question whether or not a person who can read and write, and has the opportunity of knowing the contents of a paper which he is about to sign, can rely on the representations of any person as to its contents, and thereafter claim that such representations were false? It ought to be stated that a fair inference from the evidence of Mrs. Reser is, that she is an intelligent woman, who seemed to have possessed knowledge of her husband's business, and on several occasions demonstrated more capacity to protect his interests than he did. She can write, and it is very clearly proved, circumstantially, that she can read. What was her duty in the premises; and what are the legal consequences of her failure to perform it? It is said that there was a relation of peculiar trust and confidence between Mrs. Reser and Warden in such matters. He had been her husband's banker and partner, and everything had been satisfactory. Why should she not trust? This is assuming too much even for argumentative latitude, because if it is true that everything had been satisfactory up to that time, it is a very strong presumption that the facts of the procurement of her signature are as Warden claims them. But there was no such relation existing by virtue of these facts, from which the law will imply that Mrs. Reser had a right to rely on the representations of Warden. Even if her husband had made such a representation, and she relied on it, and at no time asked for the mortgage to be read, it was at her peril alone. (*Roach v. Karr*, 18 Kas. 534.) In this case the proof showed

that the wife was illiterate, and could read only a little by spelling out the words; that the mortgage was not read to her; and that she signed the instrument believing it was a note, and relying on the assertion of her husband that it was a note; and yet we have no intimation in this case that there was a relation of trust and confidence between husband and wife— and why? Because the primary object of the homestead provisions of the law is to guard the wife and family against the improvident acts of the husband and father. In such matters she must not rely on her natural protector, notwithstanding the sacred relation growing out of the marriage state; then, how much less can she rely on the promise or representation of the creditor of the husband?

The case of *Roach v. Karr* is one in which the mortgage was made directly to Karr, who brought the action to foreclose. Karr was the payee of the note and mortgage, and there is no question of an innocent third party. The case at bar is one in which Reser and wife executed a note and mortgage to Proctor, but it was for the benefit of James S. Warden in fact. And he was the notary before whom the acknowledgment was taken, but no question is made on the record as to his duty as a notary.

*Ort v. Fowler*, 31 Kas. 478, is an interesting case on the question of the negligence of Mrs. Reser in signing the mortgage without reading it or requiring it to be read to her, and it cites many authorities; but all of them that we have examined are controversies between the maker and an innocent holder before maturity, without notice of the imperfections, the case of *Ort v. Fowler* being of that character.

The note and mortgage in suit here were given to Frank W. Proctor, but the object of their execution was to protect James S. Warden, who had indorsed a note of Reser's to him, to Proctor, and had guaranteed its payment. It seems to us, from the evidence in the record and the indorsements on the $990 note, that at the time the note and mortgage were executed the $990 note of Reser to Warden, assigned to Proctor, had been paid, partly by Reser, mostly by Warden, so that

the note and mortgage were in fact executed for the benefit of Warden, who also acted as the notary who took the acknowledgment of the mortgage; and the representation that it was a chattel mortgage was made by the party for whose benefit it was executed, and made by the notary who took the acknowledgment of Mrs. Reser to it. It seems that the authorities cited in the brief of counsel are not applicable to the state of facts presented here. It may be said, however, that the special findings of the jury control this question so far as determining that this note and mortgage were given to Frank W. Proctor; they are, that Reser and his wife both signed the note; that Reser signed the mortgage to secure the note of Frank W. Proctor for one thousand dollars; that Proctor indorsed and delivered the note to J. S. Warden; that Warden was the owner and holder of the note, and the real party in interest. These findings must be construed in the light of the testimony supporting them; and the evidence authorizes the assumption by this court, at least for the purpose of determining the legal questions arising on this record, that at the date of the execution of the note and mortgage in suit, the note of Reser held by Proctor had been paid largely by Warden, and that this note and mortgage executed to Proctor were for the benefit of Warden, to protect him in the payment he had made to Proctor, and that all the time Warden was the real party in interest. The question then is, had Mrs. Reser the right to rely on the representations of the real payee of that mortgage, that real payee being the notary who took the acknowledgment, that the instrument was a chattel mortgage in renewal of one she had previously executed? And this is the question, in any view that can be taken, for if it is held that Proctor was the payee, and indorsed the note and mortgage to Warden before maturity, then Warden had notice of this defense, because he transacted the business for Proctor; he made the misrepresentation on the belief of which Mrs. Reser signed, and he took her acknowledgment. He now seeks to foreclose a mortgage on real estate, which he represented was a chattel mortgage. Can he thus take advantage of his own wrong? An innocent holder

might be protected for the several reasons recited in the case of *Roach v. Karr*, but none of these can be utilized by Warden to protect himself from his own misrepresentation as to the character of the instrument.    Accepting the special finding

3. Void mortgage of homestead.

of the jury as conclusive here, that Mrs. Reser signed in the belief that it was a chattel mortgage, induced solely by the representation of Warden, we are compelled to hold that the legal conclusion of the court below, that the mortgage was void, was not erroneous, because—

"A mortgage of the homestead, to be of any validity, re⁻ quires that the 'joint consent' of both the husband and wife should be given thereto; and this consent must not be brought about by any fraud, deception, or misstatement of material facts by the other party to the alienation, but must be the voluntary and intelligent consent of both the husband and wife." (*Bird v. Logan*, 35 Kas. 228.)

In this case it is said: "These misapprehensions were induced and brought about by Adams, [the notary,] who was evidently acting as the plaintiff's agent," and this was a suit to enforce specific performance of the conditions of a bond for a deed of the homestead, signed by the husband and wife, and acknowledged before a notary.

A reversal is urged for the reason that the court refused to submit to the jury certain special questions, requested by the plaintiff in error, but the record declares that the court of its

1. Special questions, refusal to submit, not error.

own motion submitted special interrogatories that were almost identical in language, scope and bearing with those suggested.    The particular questions of fact submitted by the court embraced every material question arising in the case.    It is true that under the statute, parties have the right to have particular questions of fact prepared by them submitted, and a refusal by the court to do so,

2. General instructions— refusal, not error.

followed by a neglect or omission to submit such questions as are raised by the pleadings and are material to the issues, is reversible error; but in this case the party complaining received the benefits of his suggestions by the submission of the special interrogatories shown in the record. (*Stickel v. Bender*, 37 Kas. 457.)

Finally, it is said that the court erred in the refusal to give instructions one, two, five, six, seven, and eight, as requested by the plaintiff in error. This case was not tried by a jury. The only duty of the jury was to return findings on particular questions of fact submitted to them by the court. It may be, that if any of the instructions refused were necessary to enable the jury to reach conclusions on the particular questions of fact submitted, that it was error to refuse them. Instructions one, two and five were upon questions not submitted to the jury, and it was not error to refuse them. Instruction six was substantially given by the court in the general charge to the jury. The others were properly refused, as they did not aid the jury in arriving at the facts necessary to answer the special questions. All the things enumerated in instructions six, seven and eight were questions for the court after the jury had determined the facts. We have been discussing in this opinion the legal effect of the representation made by Warden to Mrs. Reser, as found by the jury, to determine whether or not the court erred in its conclusion of law, and the necessity for this discussion makes it evident that the instructions asked for were not proper, in view of the fact that the duty of the jury was confined solely to the determination of particular questions of fact.

We are compelled to say, in accordance with oft-repeated declarations of this court, on the findings of the jury on controverted questions of fact, that there is no error in the record so material as to cause reversal; it is therefore recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.