REBECCA BERRY v. JOSEPH BERRY *et al.*
No. 9336.

HOMESTEAD — *mortgage, wife's duress available as defense even against innocent holder of negotiable note secured.* The defense of duress is available to the wife in an action to foreclose a mortgage upon the homestead which she was compelled to sign through fear of bodily harm and abandonment by her husband, although it was given to secure the payment of a negotiable promissory note that had been transferred to an innocent holder before maturity.

*Error from Nemaha District Court.*
*Hon. J. F. Thompson, Judge.*

REVERSED AND REMANDED.      OPINION FILED FEBRUARY 6, 1897.

*S. K. Woodworth,* for plaintiff in error.

*Wells & Wells* and *F. E. Lane,* for defendants in error.

JOHNSTON, J.   On December 2, 1889, Joseph and Rebecca Berry, husband and wife, united in giving to the Guaranty Investment Company a promissory note for $1,800, payable five years after date, and a mortgage securing the payment of the note was signed by them.   The mortgage was upon a quarter-section of land occupied by them as a homestead, and it was subject and subordinate to another mortgage previously given by them to the Mutual Benefit Life Insurance Company to secure an indebtedness of $1,200.   On February 2, 1890, and before the maturity of the note, the Guaranty Investment Company indorsed and transferred the same to the executors of the estate of Charlemagne Tower, deceased, and the mortgage was assigned and delivered with the note. Default was made in the interest payments, and, afterward, the Insurance Company began a foreclosure

proceeding in which the executors of the Tower estate were made parties defendant, who, on July 16, 1892, filed an answer and cross-petition setting up their note and mortgage and asking for judgment against the Berrys, and, also, that it be declared a lien on the mortgaged premises, subject only to the lien of the Insurance Company.

Joseph Berry did not appear or defend, but Rebecca Berry contested the validity of the mortgage given to the Guaranty Investment Company, alleging that it was signed under duress. She averred that her husband, who was a strong, powerful man, of violent temper, threatened to abandon her to her own resources, and, also, to kill her; and, believing that he was a dangerous man, who would carry out his threats, she was induced to sign the mortgage. She alleged that the land on which the mortgage was given was purchased by her husband as a homestead, and that it was occupied as a homestead before the execution of the mortgage, and had been continuously ever since that time. She did not question her liability upon the note, nor deny that the note and mortgage were assigned as alleged; neither did she make any defense other than that of duress in the execution of the mortgage. On the latter ground she asked that the mortgage be canceled and held for naught.

A demurrer to her answer was sustained; and, she electing to stand on her answer, judgment was rendered against her for $2,625, and for foreclosure of the mortgage, and declaring the judgment a lien on the homestead premises.

Was the mortgage valid and enforceable? If the averments as to duress are true, there was no free will or consent by Rebecca Berry in the execution of the mortgage. As the case stands, we must accept

these averments as facts, and, if so regarded, it would seem that Mrs. Berry was induced to sign the mortgage by threats of bodily harm such as might overcome the will of a person of ordinary firmness and courage. In addition to the threats of personal violence, there were threats of separation and abandonment. The property described in the mortgage was a homestead, and could only be alienated by the joint consent of husband and wife. If Mrs. Berry was compelled by force and fear to sign the mortgage, if there was actual duress, she gave no consent, and the mortgage is a nullity. *Anderson v. Anderson,* 9 Kan. 112; *Helm v. Helm,* 11 id. 19; *Howell, Jewett & Co. v. McCrie,* 36 id. 636; *Jenkins v. Simmons,* 37 id. 496; *Gabbey v. Forgeus, Adm'r,* 38 id. 62; *Warden v. Reser,* 38 id. 87. This position would be conceded by the defendant in error if the mortgage stood alone, but, as it accompanied, and was security for, a negotiable promissory note which was transferred to a *bona fide* indorsee before maturity, it is contended that the defense of duress is not available. An assignee who obtains a promissory note before maturity, for value and without notice, takes it free from equities. A mortgage executed concurrently with a note to secure its payment is generally held to be an incident of the note, and to partake of its negotiable character. It appears to be well settled by the courts that a *bona fide* indorsee before maturity of a note secured by a mortgage upon property other than a homestead, and without notice of infirmities, takes the mortgage, as he takes the note, unaffected by any equities arising between the mortgagor and mortgagee. *Burhans v. Hutcheson,* 25 Kan. 625; *Lewis v. Kirk,* 28 id. 497; *Carpenter v. Longan,* 16 Wall. 271; Jones, Mortg. § 834 and cases cited; 15 Am. & Eng. Encyc.

Law, 855, and cases cited. This rule is not prescribed by any statute, but is based upon the equitable principle that the debt, being the main thing, imparts its character to the mortgage, and that when the note is assigned the security follows it and takes the same character. It is conceded that this rule is controlling where the property mortgaged is not a homestead; but it is contended that it can never apply where the mortgage is upon a homestead and where the wife or husband has not joined in, or consented to, its execution. The rule goes upon the theory that a mortgage has actually been executed and is in existence; but, in this State, if the wife or husband does not give consent, or join in the execution, the instrument does not rise to the rank of a mortgage. It is absolutely void, and not even binding upon the one who does consent. Would it be contended that a mortgage to which the wife's signature was forged, or which had never been signed by her, would follow the note and be enforceable as a security? It is unlike a case where joint consent was actually given though obtained by fraud. As the consent of the wife is lacking, there is no mortgage. It would be carrying the doctrine of negotiability beyond reason, to make a mortgage which is against the statute and prohibited by the Constitution binding and enforceable, merely because it accompanied and purported to secure a negotiable promissory note. It is not negotiable in form, and of itself has no negotiable qualities; but a rule has been established by the courts, that because of its relation to negotiable paper it is invested with a negotiable character. A rule so made, applying to mortgages the principles which pertain to negotiable paper, cannot prevail over the specific provisions of the Constitution and statute. The Constitution pro-

vides that a homestead "shall not be alienated without the joint consent of husband and wife, when that relation exists." Art. XV, Sec. 9. The same prohibition is repeated by the Legislature in one of the statutes. ¶ 2996 Gen. Stat. 1889. These positive and solemn declarations cannot be overcome by a mere rule of commercial law or by any judicial dogma. In *Anderson v. Anderson,* supra, where a conveyance of a homestead was obtained by duress of the wife, it was urged that a purchaser in good faith and for a valuable consideration without notice of the duress should be protected. In deciding the case, however, it was held that "if a wife sign the deed of the homestead under duress she does not give that consent to the alienation which the statute requires; and in such case the 'good faith' of the purchaser cannot be considered in determining the validity of the deed." Much reliance is placed on *Beals v. Neddo,* 2 Fed. Rep. 41, which is contrary to the ruling in *Anderson v. Anderson,* supra, but it appears to be wholly founded upon cases in which the homestead question was not involved or considered. The Court, in its opinion, recognized that, under the Constitution, duress is available as a defense within the decisions of the Supreme Court of this State, but did not incline to follow them. The Supreme Court of Iowa, in a case where a note and mortgage were obtained by duress and the mortgage was upon a homestead, held that the innocent holder of the note and mortgage might recover upon the note, but was not entitled to a foreclosure of the mortgage. The doctrine is there recognized that, in an ordinary case, a mortgage given to secure a negotiable note partakes of the negotiable character; but, in that State, there is a statute which requires a concurrence

of both husband and wife to a conveyance or the incumbrance of the homestead.   In the case mentioned the signature of the wife was secured by duress, and it was held that she did not legally concur in the conveyance.   The Court added :

"Mortgages are not intended to circulate as commercial paper, and we do not think that the interests of commerce require that the principles applicable to negotiable paper shall be extended to a mortgage executed under such circumstances as the mortgage in question."  *First National Bank of Nevada v. Bryan et al.*, 62 Iowa, 42.

We think the answer alleged a defense, and the demurrer thereto should have been overruled.

As the case is presented, the question of estoppel is not before us for consideration.   While considerable time elapsed between the execution of the mortgage and the setting up of the defense, there is nothing to show knowledge on her part of the transfer of the note and the subsequent ownership of the same, nor are there any averments showing her acts or declarations in respect to the note and mortgage.

The judgment of the District Court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.