## SHANKS et al. v. NORTON.

No. 9638—Opinion Filed May 11, 1920.

Rehearing Denied July 24, 1920.

(Syllabus by the Court.)

**1. Homestead—Conveyance by Married Person—Constitutional Provision.**

Under section 2, art. 12, of the Constitution of Oklahoma, the owner of a homestead, if married, is without power to sell the same without the consent of his or her spouse given in such manner as prescribed by law.

**2. Same—Deed by Wife Alone—Rights of Second Husband.**

Certain land was allotted to Peggie, which was thereafter occupied as the homestead of herself and husband. Peggie executed to Norton a deed to the land so occupied, but without her husband joining therein. Afterward the husband died, and Peggie intermarried with one Joseph, who, with Peggie, continued to reside upon the land, claiming the same as their joint homestead. Thereafter Peggie filed an action against Norton to cancel the deed, alleging fraud in procuring the same. Joseph was not made a party to this action. Norton prevailed in the suit, and then instituted the present action against Peggie and Joseph for possession of the premises. Held, that the deed to Norton was void at the date of the marriage of Joseph to Peggie, and, as Joseph and Peggie thereafter occupied the premises as their joint homestead, Joseph was not concluded by the judgment in favor of Norton against Peggie, and that Norton was not entitled to the possession of the premises sued for.

Error from District Court, Seminole County; J. W. Bolen, Judge.

Action for possession of real estate by Sam Norton against Peggie Shanks and another. Judgment for plaintiff, and defendants bring error. Reversed.

J. A. Baker, for plaintiffs in error.

Fowler & Wilson, for defendant in error.

PITCHFORD, J. This is an appeal from the district court of Seminole county. The plaintiffs in error were defendants and defendant · in error was plaintiff in the court below. The parties will be designated as they appear in the trial court.

The action was prosecuted by plaintiff against defendants to recover possession of certain real estate and for rents. A jury was waived and the case submitted to the court upon the following agreed statement of facts:

"It is stipulated and agreed by and between the parties and by counsel as follows, to wit:

"That Peggie Shanks is a Seminole freedman duly and legally enrolled as such under the name of Peggie Jackson, opposite Roll No. 2366; and that the land sued for in this case was a part of her allotment as such Seminole freedman.

· "That the certificate of allotment was issued to her and patent afterwards issued and delivered to her to the land involved in this controversy. The patent issuing to her on this land being a homestead patent, under· the laws of the United States relating to allotments of lands of the Seminole Tribe of Indians.

"That Peggie Jackson ˙the allottee, now Peggie Shanks, went into the possession of the land involved in this controversy before it was allotted to her and has been continuously in possession of the same, residing thereon from that date until the present time, claiming the same as her homestead.

"That afterwards, to wit: while residing upon the land, the said Peggie Shanks, formerly Peggie Kelley and formerly Peggie Jackson, executed a warranty deed on the 5th day of August, 1908, to the plaintiff, Sam Norton, to the land involved in this controversy, to wit: the southeast quarter of the northeast quarter of section twelve, township eight north, range ·seven east, I. M. in said county of Seminole.

"That at the time of making and executing the deed just referred to, a copy of which is hereto attached and made a part of this stipulation and agreement and marked. Ex. A, the said Peggie Shanks, nee Peggie Kelley, nee Peggie Jackson, was married to Barrett Kelley, and was living with him as husband and wife. That the said Barrett Kelley did not join in said deed, as appears by reference thereto.

"That during the year 1908, after the execution of said deed by the said Peggie Kelley, as aforesaid, the said Barrett Kelley died, and that afterwards, during the same year, she was intermarried with the defendant Joseph Shanks, with whom she is now living upon said land as their joint homestead.

"That afterwards Peggie Kelley, under the name of Peggie Jackson, who is now the defendant Peggie Shanks, filed in the district court of Seminole county, case No. 1797, to cancel the aforesaid deed to Sam Norton, the plaintiff herein; a copy of the petition, answer and judgment of the court are hereto attached in said case No. 1797, and made a part of this agreed statement of facts and marked Exhibits B and C and D respectively.

"It is further stipulated and agreed that on October 31st, 1912, Peggie Kelley, now Peggie Shanks, formerly Peggie Jackson, filed her action in the district court aforesaid as cause No. 2123, a copy of the petition, answer therein, the findings of fact by the court and the final journal entry therein are all hereto attached and made a part of this agreed statement of facts and marked Exhibits E, F, G, and H, respectively.

"That said cause No. 2123 was thereafter duly appealed to the Supreme Court of the state of Oklahoma, and was filed in said Supreme Court under No. 6618, entitled Sam Norton, Plaintiff in Error, v. Peggie Kelley, Defendant in Error.

"That on the 11th day of April, 1916, the Supreme Court of the state of Oklahoma rendered its opinion therein, a copy of the mandate and opinion of the court in said cause being hereto attached and ˙made a part of this agreed statement of facts, and marked Exhibits I and J, respectively, which mandate aforesaid was on the 9th day of November, 1916, by order of the district court of Seminole county, spread of record, and judgment rendered thereon ˙in accordance with the direction of said mandate.

"It is further agreed that the reasonable rental value of said land per annum is $50.00.

"It is further agreed that the defendants are not in possession of the land under any agreement, contract or arrangement with the plaintiff, Sam Norton, or anyone authorized by him to make such an arrangement or contract.

"This agreed statement of facts is made in open court pending the trial thereof."

We ascertain from the agreed statement of facts that on the date of the execution of the deed, Peggie Jackson, the allottee, was the wife of Barrett Kelley and that they were living together as man and wife, and also that Peggie had been living on the land prior to the allotment and up to the time of the agreed statement of facts, claiming the land as her homestead; that after the death of Barrett Kelley, Peggie intermarried with her codefendant, Joseph Shanks, and that from the date of her marriage with Joseph,

she and Joseph had resided upon the land, claiming the same as their joint homestead.

On the 26th day of September, 1911, Peggie, in the name of Peggie Kelley, filed in the district court of Seminole county an action, No. 1797, against the plaintiff, Norton, seeking to have the deed set aside, charging that the same had been procured by fraud and that the means used in securing the deed had amounted to forgery. The answer of Norton was in the nature of a general denial.

On February 14, 1912, a judgment was rendered finding the issues in favor of Norton. There was no appeal from this judgment, and the same became final.

On October 31, 1912, Peggie Kelley filed another action in the district court of Seminole county, No. 2123, against Norton in which she sought to have the deed canceled. The allegations contained in the petition in the last action were practically the same as in the first action, except the grounds for cancelation of the deed were more fully stated in the latter action. To the last petition Norton answered, denying the allegations of fraud, and further alleged that on the 14th day of February, 1912, in the district court of Seminole county, the matters in controversy were fully litigated and determined between the parties, and that the judgment in that case was there rendered and entered of record, and that said judgment was conclusive and res adjudicata as to all matters set forth in the last petition. Judgment was rendered in favor of Peggie canceling the deed. From this judgment Norton appealed to this court. On April 11, 1916, in a judgment rendered by this court, the judgment of the trial court was reversed and remanded with instructions to set aside the judgment rendered by the trial court and render judgment in favor of Norton.

The instant action was filed by plaintiff for possession. The authorities in this jurisdiction are uniform to the effect that if the homestead character had attached to the land at the execution and delivery of the deed, then Barrett Kelley was entitled to all the protections and safeguards pertaining to the homestead, and in that event any deed executed by Peggie alone would be void.

If the title to the land had been in Barrett, the deed executed by him alone would have been invalid, and since the act of 1905, if the title to the same was held in the wife, the deed executed by Peggie to the homestead would be invalid, unless Barrett had joined therein.

Section 2, article 12, of the Constitution of Oklahoma provides that the owner, if married, shall not sell the homestead without the consent of his or her spouse given in such manner as may be prescribed by law. Section 1143, Rev. Laws 1910, provides that no deed, mortgage, or contract relating to the homestead, exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced or legally separated, except to the extent provided in subsequent sections.

In McWhorter v. Brady, 41 Okla. 383, 140 Pac. 782, the 4th and 5th paragraphs of the syllabus are as follows:

"4. A homestead, the title to which is in the husband, cannot be sold or otherwise alienated by the husband, without the wife joining in the conveyance, unless the wife has voluntarily abandoned the husband, or, for any cause, has taken up her residence out of the state for a period of one year or more. A deed to a homestead, executed by a husband, without such abandonment or removal of residence on the part of the wife, is void.

"5. Where, in a divorce case, a decree had been denied both parties, but the wife had been enjoined from interfering with the husband's possession of the homestead, she was not thereby divested of her right or title to and in the homestead, but was yet the legal wife of the husband, and any attempt by the latter to sell the homestead without the wife's consent, or without her joining in the conveyance, was void."

In the case of Whelan v. Adams et al., 44 Okla. 696, 145 Pac. 1158, Jas. D. Whelan executed a deed purporting to convey to P. O. Adams certain land. The deed was not signed by the wife and was given without her knowledge. The land sold was the homestead of Whelan and wife. We quote from the body of the opinion as follows:

"The sale, having been made in direct violation of the express provision of our organic law, was void; hence Adams acquired no rights by reason of his purchase. The constitutional inhibition is plain, unambiguous, and admits of no exceptions which would destroy its obvious design. If the owner be a married man, the consent of the wife, given in such manner as may be prescribed by law, is essential to the valid alienation of the homestead, unless (it may be) the conveyance be made to her. No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution."

In Morris v. Ward, 5 Kan. (2nd Ed. An.) 141, the court said:

"No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he alone can do, or suffer to be done, can cast the slightest cloud upon the title to the homestead; it remains absolutely free from all liens and incumbrances, except those mentioned in the Constitution."

The land conveyed, having been impressed with the homestead character during the lifetime of Barrett Kelley, then, in order to make the deed of any force or effect, it was necessary for Barrett to join therein. He having failed to do so, then when Peggie and Joseph Shanks intermarried, the deed being void, and the land absolutely free from all grants and incumbrances, Joseph being married to Peggie, living upon the land, claiming the same as their joint homestead, the homestead rights existing at the time the deed was executed continued, and Joseph Shanks, by reason of his marriage to Peggie, was entitled to all the homestead rights in the land to the same extent as if the deed had never been executed.

It must be borne in mind that the action brought by Peggie to cancel the deed was almost three years after her intermarriage with Joseph Shanks. In this action Joseph was not made a party, neither was he made a party in the second action brought by Peggie. Assuming without deciding that Peggie is concluded by the judgment rendered in the case of Norton v. Kelley, 57 Okla. 222, 156 Pac. 1164, still Joseph would not be concluded, or in any manner bound by the judgment therein rendered, for the reason he was not a party to that action. Had both he and Peggie been parties, then there would be no question as to the conclusive effect of the judgment as to each.

We have been unable to find any decisions of this court directly in point. However, we are assisted in our conclusions by the decisions of other courts.

In the case of Larson v. Reynolds & Packard, 13 Iowa, 579, Larson was occupying certain property as a homestead with his wife and children. He executed a mortgage to the homestead property. This mortgage was not signed by his wife. An action was commenced to foreclose the mortgage. The decree of foreclosure was entered by default. The first wife died after the execution of the mortgage but before the institution of the foreclosure suit. Larson married again. The second wife was not made a party to the action. It was there held that the right of the second wife to the homestead was not affected by the mortgage foreclosure. The court said:

"If the complainant's present wife had been made a party to the bill to foreclose, we think the controversy would have been at an end. A failure to set up the homestead exemption at that time would have concluded and estopped them from making the claim against one holding under the sale. The order of foreclosure would have settled the homestead right and in an action for the possession it could not be again adjudicated. This seems to us to be in accordance with familiar and well settled law as applied to analogous questions and is sustained by the following direct adjudications: Lee v. Kingsley, 13 Texas, 68; Tadlock v. Eccles, 20 Id., 782. Where there is personal service, and a party from his own fault fails to make his defense, he is as much concluded as if the question had been expressly determined.

"And so, again, if complainant had not been married at the time of the foreclosure, he could not now raise the question. For, if unmarried, he was the only person who could defend, or insist upon the homestead right. And though the mortgage was invalid for want of the wife's signature, yet he might or not insist upon such invalidity. It is as if he had been sued upon a note declared void by fraud, and had failed after personal service to make his defense. In such a case, the judgment concludes him of course, and we see no reason why the same rule does not apply in the present case.

"The mortgage being invalid at the time of its execution, the subsequent death of the wife would not change its character. * * *"

The case of Chambers v. Cox, 23 Kan. 393, was one where the wife never had been a resident of the state and had been abandoned without cause. The husband conveyed the homestead by his deed and took back a mortgage for the purchase price. The suit was to foreclose the mortgage. The defense was failure of title because the wife did not join in the deed. The court held that no title passed by the separate deed of the husband, notwithstanding the wife never had lived in the state. Mr. Justice Brewer, speaking for the court, said:

"The separate deed of a married man to the homestead is void; it does not divest him of title, nor estop him from recovering the land. The question is not, Who will inherit from him? but, Has his title been divested? And the Constitution says that his title to the homestead shall not pass, unless his wife joins in the deed. While the Legislature may regulate the manner of inheritance, it cannot avoid or limit the constitutional provision for the protection of homesteads.

The Constitution forbids the alienation without the joint consent of husband and wife. It does not add, 'provided they are living together and occupying the homestead,' nor 'providing they both are residents of the state'; but the prohibition against separate alienation is absolute when the relation of husband and wife exists. Whether any exception to this absolute prohibition were wise, it is not for us to inquire. The Legislature has not attempted to make any, even if it had the power, but has repeated in the statute the very terms of the constitutional prohibition."

Counsel for plaintiff in their brief say:

"Assuming for the purpose of this argument that it be true that the land was a homestead of Barrett Kelley and Peggie Kelley at the time of her deed to Norton and that Barrett Kelley did not sign the same, that was a matter directly involving title to the land and the validity of the deed just as much so as was the question of overreaching and inadequacy of consideration and the judgment of the Hon. Tom D. McKeown, the then district judge 'that plaintiff take nothing and that defendant have and recover his costs' was as conclusive against Peggie Kelley on the question of homestead as it was upon any other theory that might have been brought into the case. In both the former suits brought by Peggie Kelley, one of the questions and the controlling one was whether or not her deed to Sam Norton of August 5, 1908, should be cancelled. In the first the district court said 'No.' In the second this honorable court said 'No', because she was estopped and concluded by the former judgment, which was a decision on the merits, concerning the same subject-matter, between the same parties. Will this honorable court, after both of the decisions above mentioned, permit her to deny the validity of said deed, and, by doing so, withhold from us the possession of the land which has twice been solemnly decreed and adjudged to be ours?"

In answer to the foregoing question propounded by counsel, it is sufficient to say that Joseph Shanks was not a party to the actions instituted by Peggie. He was not served with process. He never had his day in court, and his homestead interest in and to the land having attached before the institution of the actions in which Peggie sought the cancellation of the deed, he was not deprived of his rights by the judgment against Peggie.

This being an action for possession of the premises covered by the deed, plaintiff must recover, if at all, upon the strength of his own title. He is required to show that he is entitled to possession, not only against Peggie, but against Joseph as well. The judgment awarding possession against Peggie

would give him no relief, as Joseph's right to possession is not effected by the final judgment in the suits between Peggie and Norton.

We, therefore, conclude that the judgment of the trial court should be reversed, and it is so ordered.

All the Justices concur.