## HAWKINS et al. v. CORBIT et al.

No. 10190—Opinion Filed Oct. 4, 1921.

Motion to Set Aside Denied Nov. 8, 1921.

(Syllabus.)

### 1. Homestead—Constitutional Provision.

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage." Section 2, art. 12, Const. of Oklahoma.

### 2. Homestead — Conveyances — Statute.

"No deed, mortgage or other conveyance relating to real estate or any interest therein, other than for a lease for a period not to exceed one year, shall be valid until reduced to writing and subscribed by the grantors; and no deed, mortgage, or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced or legally separated, except to the extent hereinafter provided." Section 1143, Revised Laws of Oklahoma, 1910.

### 3. Same—Validity of Separate Deeds by Husband and Wife.

Under the above provisions of the Constitution and laws of Oklahoma, the homestead exempt by law cannot be alienated except by a written instrument joined in and subscribed by both husband and wife, where that relation exists. In this case the husband executed a deed at Muskogee on February 2nd; the wife was not present at the time he executed the deed. On February 5th, at Tulsa, the wife signed a separate deed, an entirely different writing, in the absence of her husband. Held, this was not a sufficient compliance with the statute to convey title to the homestead.

**4. Homestead — Liens — Equitable Power of Courts to Declare.**

It is not within the equitable power of courts in this state to declare any indebtedness a lien on a homestead. The Constitution and statutes of this state have prescribed the manner in which it may be created, and they must be strictly followed.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Dan Hawkins and Beatrice Hawkins against A. Corbit and Joe Bryant to cancel certain deeds affecting the title to the homestead of the plaintiffs. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Charles A. Dickson, J. A. Whalen, and J. Hugh Nolan, for plaintiffs in error.

James Hepburn and Charles E. Barritt, for defendants in error.

MILLER, J. This action was commenced in the district court of Okmulgee county on July 9, 1917, by Dan Hawkins and Beatrice Hawkins, as plaintiffs, against A. Corbit and Joe Bryant, defendants, to cancel certain deeds, one executed by Dan Hawkins to A. Corbit, and one executed by Beatrice Hawkins (Mrs. D. E. Hawkins being named as grantor and it being signed "D. E. Hawkins") to A. Corbit. Also, one deed executed by A. Corbit and wife to Joe Bryant, each purporting to convey the southeast quarter of section 6, township 11, range 12 east, in Okmulgee county.

The case was tried to the court on March 28, 1918. At the close of the testimony of the plaintiffs, the defendants interposed a demurrer to the evidence, which was by the court sustained and judgment rendered against the plaintiffs, to reverse which the plaintiffs perfected this appeal. The plaintiffs below are plaintiffs in error here, and the defendants below appear here as defendants in error. For convenience they will be referred to as they appeared in the lower court.

Numerous assignments of error have been made by the plaintiffs in error, but it will only be necessary to consider one. Were the separate deeds taken by defendant Corbit from the plaintiffs void because in violation of the homestead provisions of the Constitution and the statutes of Oklahoma passed pursuant to the provisions of the Constitution? We hold the deeds were void.

The petition recites the execution of these deeds; that the land in controversy was the homestead of the plaintiffs; that the relation of husband and wife existed, and they were occupying the land as their homestead. The petition further recites the grossest kind of fraud in procuring the deeds. The deed of the husband was procured at Muskogee on February 2, 1917. The deed of the wife was obtained at Tulsa, February 5, 1917, late at night, when she was in a drunken condition. The husband and wife were not together at the time of the execution of either of the deeds. The evidence introduced by the plaintiffs fully bears out these allegations in the petition. The answer is a general denial.

The plaintiffs are negroes. Dan Hawkins is an enrolled Creek freedman and the land in controversy is his allotment.

From the evidence introduced it is conclusive that the plaintiffs were husband and wife; that they were, at the time of the execution of the deeds and for several years prior thereto and up to and including the date of the trial, occupying the land in controversy as their homestead. Defendants in their brief make repeated reference to the plaintiffs as husband and wife; therefore, admitting that relation existed. They do not deny or even suggest that plaintiffs were not occupying the land in controversy as their homestead. By their brief they clearly concede this to be a fact. With these facts established, we will now apply the Constitution and laws of Oklahoma.

Section 2, article 12, Constitution of Oklahoma, relating to homesteads and the alienation thereof, provides as follows:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

This section of the Constitution says that the owner shall not sell the homestead without the consent of his spouse, given in such manner as may be prescribed by law. We find section 1143, Revised Laws of Oklahoma, 1910, prescribes the manner by which they may sell and convey:

"No deed, mortgage or other conveyance relating to real estate or any interest therein, other than for a lease for a period not to exceed one year, shall be valid until re-

duced to writing and subscribed by the grantors; and no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced or legally separated, except to the extent hereinafter provided."

It will be observed that the Legislature took especial precaution in protecting the homestead. That part applicable to conveyance by deed, stripped of the other parts which do not apply, would read:

"No deed * * * relating to the homestead exempt by law * * * shall be valid unless in writing and subscribed by both husband and wife."

Under the constitutional provisions safeguarding the homestead for the use, benefit, and protection of the family, where the relation of husband and wife exists, it can be alienated only in the manner prescribed by the statutes, and such statutes must not violate the provisions of the Constitution. In order to convey the homestead there must be a deed; it must be in writing; that writing must be subscribed by both husband and wife. Webster's International Dictionary defines the word "subscribe" as follows:

"L, Subscribere, Subscriptum; sub under plus scribere to write.)

"1. To write underneath, as one's name; to sign (one's name) to a document. 2. To sign with one's own hand; to give consent to, as by something written, or to bind one's self to the term of, by writing one's name beneath; as, to subscribe a bond. 3. To attest by writing one's name beneath; as, officers subscribe their official acts; clerks subscribe copies of records."

This is more strict than if the word "sign" had been used. It designates where they shall sign. It means they must each subscribe, sign underneath, the same writing. This language must be strictly construed, with the view of protecting the homestead. There must be a literal compliance with it in order to convey title to the homestead. The two separate deeds did not constitute a writing subscribed by both husband and wife. One deed was made at Muskogee on the 2nd of February, the other deed was made three days later and at Tulsa. The cases cited by defendants to the effect that where two separate writings are made at the same time and relating to the same matter, they constitute one transaction and are to be read together, have no application.

It is clear to us from the wording of the statute enacted by the Legislature pursuant to the direction of the Constitution, that the husband and wife must join in the execution of the same instrument in writing in order to convey title to the homestead.

"The homestead interest is jointly vested in the husband and wife for the benefit of themselves and family, without regard to which spouse owns the title to the land; the homestead interest is a creature of the Constitution and statutes, nothing like it being known at common law; it is a special and peculiar interest in real estate; it is not a mere inchoate interest in either spouse, to become vested upon the death of the other; this joint right is paramount to the individual rights of either, and being incapable of division and partition between husband and wife, it cleaves and adheres so closely to the title to the land itself that it cannot be dissociated therefrom by a mortgage foreclosure sale under a court decree to which either husband or wife is not a party (See par. 9, Op.)" Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681.

"Section 2, art. 12, of the Constitution, prohibits the sale of the homestead of the family, where the owner is a married man, without the consent of the wife, given in such manner as may be prescribed by law.

"An attempted conveyance by deed of the homestead of the family by a married man, given without the wife's consent in the manner prescribed by law, is void." Whelan v. Adams et al., 44 Okla. 696, 145 Pac. 1158.

"Certain land was allotted to Peggie, which was thereafter occupied as the homestead of herself and husband. Peggie executed to Norton a deed to the land so occupied, but without her husband joining therein. Afterward the husband died, and Peggie intermarried with one Joseph, who, with Peggie, continued to reside upon the land, claiming the same as their joint homestead. Thereafter Peggie filed an action against Norton to cancel the deed, alleging fraud in procuring the same. Joseph was not made a party to this action. Norton prevailed in the suit, and then instituted the present action against Peggie and Joseph for possession of the premises. Held, that the deed to Norton was void at the date of the marriage of Joseph to Peggie, and, as Joseph and Peggie thereafter occupied the premises as their joint homestead, Joseph was not concluded by the judgment in favor of Norton against Peggie, and that Norton was not entitled to the possession of the premises sued for." Shanks v. Norton, 79 Okla. 93, 191 Pac. 170.

"A verbal agreement entered into by a married man for the sale of the homestead of the family, made without the consent of the wife, though accompanied by partial performance on the part of the intended purchaser, is void, and will not be enforced in an action for specific performance brought

by such purchaser." Elliott v. Bond, 72 Oklahoma, 176 Pac. 991.

"An oil and gas lease covering a homestead which grants the right to enter upon the same and operate for oil and gas, together with the right to lay pipe lines, telephone and telegraph lines, and erect power houses, stations, fixtures necessary for the production of oil and gas, is such a grant of the use and occupancy of the homestead as requires the joint consent of both the husband and wife." Carter Oil Co. v. Popp, 70 Oklahoma, 174 Pac. 747.

"Under the act of 1901 (Sess. Laws 1901, p. 78, c. 10; Comp. Laws 1909, sec. 1187), which provides that no deed, mortgage or contract relating to the homestead shall be valid unless in writing and subscribed by both husband and wife, an instrument executed by the husband alone, conveying a right of way for a period of ten years over a part of the homestead, is not valid as against the wife." Kelly et al. v. Mosby et al., 34 Okla. 218, 124 Pac. 984.

One of the earliest adjudicated cases on conveyance of the homestead exempt by law is Dickinson v. McLane, 57 N. H. 31. That part of the statute which the court was construing reads as follows:

"And no release or waiver of such exemption shall be valid, unless made by deed executed by the husband and wife, with all the formalities required by law for the conveyance of real estate."

The syllabus in the case reads as follows:

"Under the act of 1851, exempting the homestead of families from attachment, etc. (Comp. Stats., ch. 196), a married woman cannot release her homestead in the estate of her husband by her separate deed."

Ladd, J., concurring in the opinion of the court, states:

"The separate deed of the husband, and the separate deed of the wife, are alike ineffectual to pass the homestead right. By the plain terms of the statute, neither can have any effect upon it. It seems to follow that the separate deeds of both must be equally ineffectual. The statute created a new and somewhat peculiar estate—an inchoate right in which the wife and minor children, as well as the husband, have an interest. It provides the exact mode in which that right may be released or conveyed."

In Howell, Jewett & Co. v. McCrie, 36 Kan. 636, 14 Pac. 257, the very able, logical, and exhaustive opinion written by Simpson, C., is so illuminating that it is worthy of an extended quotation:

"The homestead feature of the laws has always been regarded with peculiar - favor by the courts of those states by which it has

been enacted. It has been the theme of both forensic and judicial eloquence. It has been repeatedy declared in legislative halls and from the bench, that the policy of these laws is 'liberal' and 'benevolent'; 'their object a noble one'; that 'they are an enlightening public policy;' 'their provisions the most beneficent.' In the convention that framed the Constitution of the state there was no one subject that was more carefully considered and more thoroughly discussed than the homestead provision. At least twenty-five pages of the published debates of that body are devoted to the discussion of this subject. In the various stages and phases of that discussion, among the many opinions and comments made on the section, as it was being perfected, and as finally adopted, the following expressions are selected as guides to the intention of its authors, to wit: 'The wife's right to the actual control of the homestead.' 'The guarantee of a home to every member of the family.' 'A reckless or drunken husband should not have power to alienate the home of his family.' 'The protection of the family, and not the head of the family merely.' 'To give permanency and value to the homestead by making its alienation difficult.' 'To put it out of the power of the husband or the misfortunes of trade to take away the homestead.' 'A home for the family, that Shylocks cannot reach.' 'The woman, the wife and mother, shall have control of the home.' 'There is no intention to exclude the woman, for that would destroy the object of a homestead.' 'Neither the hand of the law nor all the uncertainties of life can eject the family from possession of it.' 'Gives every mother and child in the state a home to which they may retire and find shelter from the storms of life.' This is the spirit in which the homestead provision was conceived, and these are the reasons for its adoption, and it must be read in the light, and construed in the spirit of these declaratory statements of its framers.

"In the earliest adjudications of this court on questions arising under this homestead feature of our Constitution, the same or similar expressions are used. In Morris v. Ward, 5 Kan. 239, Mr. Justice Valentine says:

" 'The homestead was not intended for the play and sport of capricious husbands merely, nor can it be made liable for his weaknesses or misfortunes. It was not established for the benefit of the husband alone, but for the benefit of the family and of society; to protect the family from destitution and society from the danger of her citizens becoming paupers.'

"In Helm v. Helm, 11 Kan. 19, Chief Justice Kingman says:

" 'The wife's interest is an existing one. The occupation and enjoyment of the estate is secured to her against any act of her husband or of creditors without her consent.

If her husband abandons her, that use remains to her and her family. With or without her husband, the law has set this property apart as her home.'

"These citations are sufficient to show that both the convention that framed the Constitution and the court whose prerogative it is to construe it. have unitedly declared its purposes and objects to be for 'the protection and maintenance of the wife and children against the neglect and improvidence of the husband and father.'

"This court. in the consideration of questions arising under this provision of the Constitution and the statutory enactments in aid thereof and supplemental thereto, must give them a liberal construction, so that the purposes intended by the laws shall the better be advanced and secured. (Thomp. H. & Ex. p. 8, and authorities there cited). These same considerations induce the courts to adopt a strict rule respecting their alienation, to the end that what is regarded so highly as to be embodied in the organic law as the most beneficent legislation and the most enlightened public policy, is not to be lightly regarded and easily-avoided by the parties for whose protection the legislation was adopted. Hence it is held that the homestead right can be barred only by complying strictly with the laws prescribing the mode of alienation. (Moore v. Titman, 33 Ill. 360; Kitchell v. Burgwin, 21 Id. 45; Connor v. McMurray. 84 Mass. 202; Greenough v. Turner, 77 Id. 332; Hoge v. Hollister, 2 Tenn. Ch. 606; Dickinson v. McLane, 57 N. H. 31.) To divest the homestead estate. the mode of conveyance prescribed by the law governing the alienation of such estates must be strictly pursued, is the rule generally adopted in all the states in which such laws have been enacted, held more strictly in some than in others, and yet in all there must be a literal compliance with the provisions of the statutes in this behalf.

"From all the adjudications upon this subject, the three following rules are deduced, and may fairly be considered as settled: (1) The object of the homestead law is to protect the family of the owner in the possession and enjoyment of the property. (2) That construction must be given such laws which will best advance and secure their object. (3) To divest the homestead estate, there must be a literal compliance with the mode of alienation prescribed by the statute."

The rules laid down in the foregoing commissioner's opinion are fully supported by the Supreme Court of Kansas, which has held, in numerous decisions, to a strict rule of construction in favor of maintaining the integrity of the homestead:

"While W. and wife owned and occupied a homestead, she duly executed and acknowledged a power of attorney, appointing and authorizing him, as her lawful attorney, 'to sign deeds and mortgages, notes, checks, releases, etc., to loan moneys, to sue and be sued, to collect rents, make contracts, giving and granting unto my said attorney full power and authority to do and perform all and any acts and things whatsoever requisite and necessary to be done in and about the premises, as fully and to all intents and purposes as I might or could do if present, with full power of substitution and ratification, hereby ratifying and confirming all that my said attorney or his substitutes shall lawfully do or cause to be done by virtue hereof.' This power of attorney was duly recorded in the county where the homestead was situated. More than 2½ years afterward, the power being still unrevoked, the husband obtained a loan and executed a mortgage to secure the payment of the same, which he signed for himself, and also signed as attorney in fact for his wife. In an action to foreclose the mortgage, it was contended by the wife that a conveyance of a homestead by virtue of a power of attorney is unauthorized, and, further. that the authority conferred by the power of attorney in this instance was too general and indefinite to authorize the execution of a mortgage upon the homestead. Held, that the power of attorney executed by the wife was insufficient to express that joint consent which the Constitution and statutes of this state require in the alienation or incumbrance of a homestead." Wallace v. Travelers' Ins. Co., 54 Kan. 442, 38 Pac. 489.

"A mortgage given upon the homestead without the joint consent of husband and wife is vo020. The alienation of a homestead after it has once been established is such a personal privilege as cannot be delegated by either the husband or wife to the other. There has been a guard thrown not only around the wife, but also around the husband. The doctrine of unity between husband and wife has been solemnly declared in the Constitution, and the homestead cannot be alienated without their joint consent." Locke v. Redmond, 6 Kan. App. 79, 49 Pac. 670.

In Morris v. Ward, 5 Kan. 239, it is held:

"A mortgage of the homestead executed by the husband alone. is void."

In Dollman v. Harris, 5 Kan. 597, it is held:

"A mortgage of a homestead, executed by the wife alone is void, notwithstanding the legal title to the same may be in her and not in her husband."

How. then, can it be said that two void instruments, one executed by the husband and the other by the wife, mortgaging the homestead. can have the effect to create a lien? They are void for all purposes, wheth-

er considered separately or taken together. See Bird v. Logan et al., 35 Kan. 228, 10 Pac. 564; Berry v. Berry, 57 Kan. 691, 47 Pac. 837; Withers v. Love, 72 Kan. 140, 83 Pac. 204; Terrant v. Swain, 15 Kan. 146; Chambers v. Cox, 23 Kan. 393; Coughlin v. Coughlin, 26 Kan. 116; Warden v. Reser, 38 Kan. 86, 16 Pac. 60.

Probably the first record we have of a conveyance of real estate by an instrument under seal as evidence of the transaction is in the first part of the 32nd chapter of Jeremiah. These instruments under seal executed for the purpose of conveying title to real estate have become universally known as deeds.

In defining a deed, Bouvier, Law Dict. vol. 1, p. 811, says:

"Deed.___A written instrument under seal, containing a contract or agreement which has been delivered by the party to be bound and accepted by the obligee or covenantee. Co. Litt. 171; 2 Bla. Com. 295; Shepp. Touchst. 50.

"A writing containing a contract sealed and delivered to the party thereto, 3 Washb. R. P. 239.

"A writing under seal by which lands, tenements, or hereditaments are conveyed for an estate not less than a freehold. 2 Bla. Com. 294.

"A writing or instrument, written on paper or parchment. sealed and delivered, to prove and testify the agreement of the parties whose deed it is to the things contained in the deed. American Button-Hole Overseaming S. M. Co. v. Burlack, 35 W. Va. 647, 14 S. E. 319. See Baker v. Westcott, 73 Tex. 129, 11 S. W. 157."

"Deed Poll. A deed which is made by one party only."

Under this definition, the deed executed by Dan Hawkins at Muskogee was a deed poll. The deed executed by Beatrice Hawkins at Tulsa was a deed poll.

Bearing in mind that the statute says:

"No deed * * * relating to the homestead exempt by law * * * shall be valid unless in writing and subscribed by both husband and wife"

—it is clear to us that one of the objects of the statute was to prevent the very thing which has occurred here. No one would contend, in the face of the statute, that the deed of Dan Hawkins conveyed any title to the homestead. All would agree that it is void. The same is true of the deed of Beatrice Hawkins. If the deed executed by the husband alone is void and the deed executed by the wife alone is void, how then

can it be said that two void instruments create one valid instrument? To hold that these two deeds were sufficient to pass the title to the homestead would be to disregard the plain provisions of the statutes, and this we may not do.

The petition makes some reference to a tender of $1,100 by the plaintiffs to the defendants. Of this the defendants, on page 11 of their brief, say:

"There is no evidence of any tender of $1,100, or any other sum. We apprehend that the court will have no trouble in determining that no tender has ever been made the defendants in error."

In view of this position taken by the defendants, it is unnecessary for us to pass on the question of a tender or defendants right to recover any sum paid the plaintiffs for this land. The defendants would not be entitled to a lien on the land for any money they had paid plaintiffs for these deeds. The courts woud be powerless to decree the money so paid to be a lien on the land, for this would be doing indirectly what we have just held cannot be done directly, to wit, alienate the homestead without the deed being subscribed by both husband and wife. If this were decreed to be a lien on the land, and the plaintiffs were unable to pay the money necessary to discharge the lien, the land, which constitutes the homestead, could be sold to satisfy the lien. This is expressly prohibited by the Constitution and statutes hereinbefore quoted.

"A mortgage lien on a homestead cannot be created without the written consent of the wife. The husband alone, by his contract, cannot change the character or the priority of a mortgage lien on the homestead; neither can he alone restore it after loss, or re-create it, without the consent of the wife, in the exact manner prescribed by law. A husband whose homestead was incumbered by a mortgage lien made an agreement with the mortgagee to execute another mortgage for the benefit of the creditor, who was to discharge his mortgage so that the new mortgage might become the first lien on the homestead, the money derived from the new mortgage to be paid to the creditor; and for the remainder due the creditor, a second mortgage was to be executed by the husband and wife on the homestead. The new mortgage was executed. the money received and paid to the creditor, whose mortgage was released. and discharged on the margin of the record thereof. The wife had no knowledge of the agreement until after the new mortgage was executed and the discharge of the first was entered on the record. She refused to execute the mortgage for the remainder due. The creditor brought an action to cancel the

discharge, and to foreclose the original mortgage, praying the court to declare it a second lien on the homestead. Held, that the court has not the power to declare the original mortgage a lien on the homestead; such a lien can only be created by the written consent of the wife, in the manner prescribed by law. It is not within the equitable power of courts in this state to declare any indebtedness a lien on a homestead. The Constitution of the state prescribes the manner of its creation, and this must be strictly followed." Jenkins v. Simmons et al., 37 Kan. 496, 15 Pac. 492.

A tender of the money is not a prerequisite to the plaintiffs' right to have the deeds canceled. It may be they are unable to make the tender. If the court should hold a tender was necessary, and they could not make it, their poverty would defeat the Constitution and statute designed to protect the very class of persons who need its protection.

The deeds were absolutely void, and plaintiffs are entitled to have them canceled. The judgment of the district court is reversed, and this cause remanded, with instructions to the trial court to grant a new trial and proceed in accordance with the views herein expressed.

HARRISON, C. J., and KANE, JOHNSON, ELTING, KENNAMER, and NICHOLSON, JJ., concur. PITCHFORD, V. C. J., dissents.